OF THE

STATE OF MISSOURI

AT THE

OCTOBER TERM, 1905.

*(Continued from Volume 193.)*

## MOORE, Appellant, v. ST. LOUIS TRANSIT COMPANY.

**In Banc, February 26, 1906.**

1. **DEMURRER.** A demurrer to the evidence admits every fact which the jurors might infer if the evidence were before them.

2. ———: **Negligence: Street Car: Unlawful Speed: Stepping On Track.** Plaintiff approached a street crossing about 7:30 or 8 o'clock of a September evening, and looking saw a car 150 feet away coming towards the crossing. He stopped from five to seven and one-half feet from the track for it to pass. Then without looking further he attempted to cross and was struck by another car, which was following, at a distance of 120 feet from the one that had just passed. It was running eighteen or twenty miles an hour, carried no headlight and rang no bell, and ran 170 feet after it struck him. There was a brilliant electric light near the crossing, and the motorman could have seen the plaintiff had he kept a vigilant watch, but made no effort to stop the car. *Held*, that, notwithstanding the negligence of the plaintiff in failing to look, it was for the jury to say whether or not his negligence was the proximate cause of his injury, for it is plain the motorman either recklessly disregarded all rules of prudence in running him down after he saw him near or approaching the track, or if he did not see him his failure to do so was owing to a reckless disregard of

ordinary care to keep a lookout for pedestrians who had the same right to the use of the street at the crossing that defendant had, and hence, the court erred in sustaining a demurrer to the evidence.

3. **NEGLIGENCE: Speed.** It is negligence *per se* to run a street car in excess of the ordinance rate.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED.

*J. O. More, T. J. Field* and *Bert Fenn* for appellant.

(1) The court erred in sustaining defendant's demurrer to plaintiff's evidence and refusing to submit the case to the jury. Penney v. Railroad, 71 Mo. App. 577; Klockenbrink v. Railroad, 81 Mo. App. 351; Chamberlain v. Railroad, 133 Mo. 587; McAndrews v. Railroad, 83 Mo. App. 233; Morgan v. Railroad, 159 Mo. 262; Railroad v. Ives, 144 U. S. 408. (2) Plaintiff, reasonably near and in full view of the track, looked once and thereby complied with the requirements of the law, and the question whether he was negligent in stepping upon the track without looking a second time, and if negligent whether his negligence contributed to the proximate cause of the accident, was a question of fact for the jury to decide in view of all the facts and circumstances of the case as shown in the evidence, and not for the court. Penney v. Railroad, 71 Mo. App. 577; Russell v. Railroad, 70 Mo. App. 88; Railroad v. Ives, 144 U. S. 408; Hutchinson v. Railroad, 61 S. W. 635. (3) The evidence offered by plaintiff was amply sufficient for the jury to find that defendant's motorman did see, or, by the exercise of ordinary care, could have seen, plaintiff's perilous position in time to avert the accident, and the case should have been submitted to the jury. Lamb v. Railroad, 147 Mo. 171; Railroad v. Griffith, 159 U. S. 603; Railroad v. Converse, 139 U.

S. 469. (4) If plaintiff was negligent, his negligence was prior in time, and remote in cause, while the defendant's negligence was subsequent in time, and proximate in the cause of the accident.

*Boyle, Priest & Lehmann* and *Lon O. Hocker* for respondent.

Plaintiff's own evidence made out a clear case of contributory negligence, and the instruction offered by defendant was properly given. After the first car passed, the evidence shows that he did not look to see whether another car was approaching, but assumed, apparently, that inasmuch as one car had passed, another would not follow. That he could have seen the car if he had looked was apparent, because he saw the first car some distance up the street. When he got to the south cross walk of Jefferson avenue, on Thomas street, the first car was passing him. When the car passed him he was, according to his statement, two or three steps from the track. Plaintiff had no right to assume, in view of the very common occurrence of cars being operated in close proximity, especially in the case of a blockade, by fire or otherwise, that two cars would not be operated close together, and it was his duty to look after the first car had passed him. If he had taken that precaution, his injury would not have been sustained. His failure to take that precaution was the proximate cause of his injury. Drake v. Railroad, 51 Mo. App. 562. The evidence introduced did not warrant the finding that the motorman could have stopped after the plaintiff became placed in a position of peril, because, according to his own statement, and of all the witnesses, the car was right on him the moment he got on the track. The motorman was warranted in assuming that the plaintiff would not place himself in a position of peril without looking or listening. Boyd v. Ry., 105 Mo. 371. Under the law of this State for many years, it is the duty of

persons when approaching street cars, as well as steam railroad tracks, to look and to listen for approaching cars at points advantageous for them to see or hear them, and to protect themselves against injury. Sharpe v. Railroad, 61 S. W. 829; Hook v. Railroad, 63 S. W. 360; Tanner v. Railroad, 61 S. W. 826. This duty is continuous until the dangerous locality is passed. Kelsey v. Railroad, 129 Mo. 362; Jones v. Barnard, 63 Mo. App. 501; Moberly v. Railroad, 98 Mo. 183; Drake v. Railroad, 51 Mo. App. 562. It will not do to say that, inasmuch as plaintiff looked once, he was exonerated from looking again. After looking the first time he saw a source of danger approaching, which his looking enabled him to avoid. After that danger had passed, it became his duty to again look in order to ascertain whether or not another danger was approaching, which his looking might have enabled him to avoid. His failing to do this was the cause of his injury. Duncan v. Railroad, 46 Mo. App. 198; Henze v. Railroad, 71 Mo. 636; Davies v. Railroad, 159 Mo. 1; Jones v. Barnard, 63 Mo. App. 501; Maxey v. Railroad, 113 Mo. 1; Butts v. Railroad, 98 Mo. 272; Drake v. Railroad, 51 Mo. App. 562.

GANTT, J.—This is an action for damages arising from personal injuries alleged to have been caused by the negligent conduct of the defendant in running its street cars over the plaintiff at the intersection of Thomas street by Jefferson avenue in the city of St. Louis.

The cause was tried in the circuit court of the city of St. Louis, and at the close of the plaintiff's evidence, the court gave an instruction in the nature of a demurrer to the evidence, whereupon plaintiff took a nonsuit with leave to move to set the same aside and grant a new trial. His motion was duly filed and overruled, and thereupon in due time he perfected his appeal to the St. Louis Court of Appeals. Owing to a dissent of

one of the judges of the Court of Appeals, the cause was certified to this court.

The following facts were developed on the trial:

Jefferson avenue runs north and south, and in it defendant has a double-track street railway, on which its cars are propelled by electricity. Thomas street intersects Jefferson avenue and runs east and west. At the time of the injuries of which he complains, the plaintiff resided on Thomas street, two or three blocks west of Jefferson avenue. Between 7:30 and 8 o'clock on the evening of September 26, 1900, plaintiff left his residence and started to the grocery store on the east side of Jefferson avenue, and across from Thomas street; he walked on the north side of Thomas street to Jefferson avenue, when he looked north and saw a street car coming south one hundred and fifty feet from Thomas street; and then turned south over the crossing, on which he walked until a little north of the center of Thomas street, when he left it and walked diagonally southeasterly to the crossing of Jefferson avenue, on the south side of Thomas street. At this point he stopped until the car passed him going south. What transpired immediately after this is told by plaintiff in his own words as follows: "Well, I was after washing my feet, and I was in the house and I goes to take hold of my pipe, I wanted to get a smoke and I had no tobacco, and I run my shoes on without stockings and I started to go and get me some tobacco, and I took hold of a little pitcher that was there to get me a little beer, so at the same time I would have a cold drink. I started out and when I got down to the corner I stepped off of the sidewalk on the crossing. The car was coming down. I see a car coming down from the alleys as I was passing along. I walked across the street and that car passed me by, and he was ringing his bell and going as fast as he could go; there is no mistake in that. Well, I was within three, or maybe I had three steps to make before I got into the track and as soon as I got into the

track, the fellow hallooed, 'Get out of there, get out of there,' and I looked and I jumped and that was the last of me, I could not tell any more. Q. When did you see the car? You said you saw a car? Ans. I see the car that passed me, I see this car ahead of it just before it struck me that way (striking his hands together) and no more. Q. Did you see that car before it struck you? A. No, sir, well, I seen it just as it was going to strike me when the fellow was hallooing at me, 'Get out of there, get out of there,' and I gave a jump and I jumped high enough to get out of his way, and that is all I know when this happened. Q. When you came to the corner did you look one way or the other to see whether the car was coming down? Ans. When I came to the corner and I stepped out into the street I looked up. Q. Which way did you look? Ans. I looked up north and I was looking south, I was going south to get across the track and I would see anything that would be coming to me there, but I looked to the north that way, and the car was coming down well from the alley, from this side of the alley, and just as I went across about four or five feet of the crossing the car passed, and I was along side of the car out in the street. There was room enough for me to keep out of the car's way as it was passing, and as soon as I turned to go across on the crossing the fellow hallooed, 'Get out of there, get out of there,' and with that I jumped off the track, and I know no more after that.''

On cross-examination he testified: ''Q. You kept walking down towards the south walk of Jefferson avenue? Ans. Yes, sir. Q. And where were you when the car passed you by? Ans. I was about in here (indicating on the map). Q. Walking south? Ans. Yes, sir. Q. To let the car pass you by? Ans. Yes, sir. Q. You did not have to stop in order to let the car pass you by? Ans. No, sir, I did not have to stop. Q. When the car was passing and left the crossing clear, how far were you away from the near rail of the track? Ans.

I had two or three steps to make until I got in the middle of that track there, just two or three steps.  Q. About six or eight feet, something of that sort? Ans. No, sir, two steps from me would amount to five feet, that is what I calculate, a step is two feet and a half. Q. Two would be five feet and three would be seven and a half feet, so you were five to seven and a half feet away? Ans. Yes, sir.  Q.  When this car passed you by? Ans. Yes, sir.  Q.  And as soon as this car passed you by, you started right on crossing the track? Ans. Yes, sir.  Q.  And you did not look any more after you looked in here for the car? Ans. No.  Q.  And you did not listen or pay any attention any more after this car had passed you?  Ans.  No, of course not.  Q.  And you could see up and down the street a good ways could you not? Ans. If it was not dark you could see a good ways down, but the trouble was you could not see where there was two cars, one behind the other, you could not see if there be two, one following the other, you could see only the one car coming, and then I expected no other one behind it.  Q. In other words you did not expect two to be so close together, and therefore did not look? Ans. Exactly.  Q. You could see a block away at that time of night on that day could you not? Ans. I do not know as I could see a block away at that time of night, I am not so sure.  Q.  You could see a light a long ways? Ans. Yes.  Q.  And you could see an object not lighted over a hundred feet away, could you not on that evening? Ans. Yes, sir.  Q.  Now, in order to look south to see whether the car comes and to look north, you merely had to turn your neck, just a glance? Ans. Yes.  Q.  You did not have to turn your whole body? Ans. Yes, sir.  Q.  And you can look in both directions can you not, the space of a second, both north and south? Ans.  I could look both north and south, and I looked north because my back was to the north and as I was going across, I looked north and I saw a car coming.  Q.  You were looking north when the first car

passed, and before you reached the cross walk? Ans. Yes, sir. Q. After the car passed you, you did not look north any more, that is what you say? Ans. No, sir, I did not.''

The evidence further tended to prove that there was no headlight on the car, no gong or bell was rung, and the car was running at a speed from eighteen to twenty miles an hour. It further appears that there was a bright street lamp burning at the time, which lighted up the crossing so that plaintiff could have been readily seen by the motorman when he started to cross the track had the motorman exercised ordinary care to see him. The evidence also shows the cars to have been about one hundred and twenty feet apart; the car which struck the plaintiff did not stop after it struck him until it had run from 150 to 170 feet south.

Mr. McCarthy, an expert motorman, testified that the hardest kind of an electric car to stop could be stopped while running eight miles an hour in 70 to 80 feet at the highest.

Mrs. Foster testified that she saw the old gentleman, the plaintiff, go across the street, and she happened to notice the car was coming very swift; that she did not know he was going to go right in front of it, but when he stepped in the track she hallooed, but it did not seem to do him any good, the car was right on him at the time. She testified that in the interval between the passage of the first car and the approach of the second, the one which struck the plaintiff, she walked from 2612 Thomas street past 2610, 2608 and 2606 and was in front of 2604 at the time of the accident. She testified further that she did not see the motorman do anything until he got about a half block beyond the crossing, when he stopped his car and came back. All the witnesses concurred in saying that the car was going very fast, from 18 to 20 miles an hour. The plaintiff also offered and read in evidence ordinance number 19,738, the 4th section of which provides:

"The conductor, motorman, gripman, driver or any other person in charge of each car shall keep a vigilant watch for all vehicles, and persons on foot, especially children, either on the track or moving towards the track, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible." The same ordinance provides: "No car shall be drawn at a greater speed than eight miles per hour." As already said, the defendant offered no evidence and the circuit court sustained a demurrer to the evidence.

I. The question for our determination at this time is the propriety of the action of the circuit court in sustaining the demurrer to the evidence. Under our system of practice, a demurrer to the evidence admits every fact which the jurors may infer if the evidence was before them. [Bender v. Railroad, 137 Mo. 240; Franke v. St. Louis, 110 Mo. 516; Patton v. Bragg, 113 Mo. 595.]

Conceding, then, to the plaintiff the benefit of the rule just announced, it must be admitted that the plaintiff was not trespasser, but had the right, equally with the defendant, to the use of the street on which he was injured by the defendant's car, and that defendant was running its car at an unlawful rate of speed at the time the plaintiff was struck by it; that the motorman in charge of the said car did not sound the gong or give plaintiff any other warning of its approach save by hallooing to him immediately before he was struck, and too late for him to escape the injury. The testimony further establishes that the car which struck plaintiff was following another car at the distance of about 120 feet; that the crossing on which plaintiff was injured was brilliantly lighted by an electric light, and that by the observance of ordinary care, or by keeping a vigilant watch for vehicles and persons on foot either on the track or moving towards it, the motorman could have discovered the danger to which plaintiff was

about to subject himself, because the evidence shows that the plaintiff stood not exceeding seven feet off from the west rail of the track on which the car was moving and began or continued to step immediately upon the track for the purpose of crossing the street as soon as the first car passed him going south, but the motorman neither sounded the gong to warn the plaintiff of the approach of the car and the danger that he was in, nor slackened the speed of his car, but recklessly ran over the crossing at the rate of eighteen or twenty miles an hour, and did not stop the car until he had passed Thomas street from 150 to 170 feet south. The evidence further shows that in the interval between the passing of the first car which plaintiff saw and waited to enable it to pass before attempting to cross the street, and the approach of the second car which struck the plaintiff, Mrs. Foster, an eye-witness to the accident, walked from in front of number 2612 to number 2604 before he was struck, the width of four houses. That the defendant was guilty of negligence *per se* in running the car which struck plaintiff at a rate of speed prohibited by the ordinance, to-wit, in excess of eight miles per hour, is too plain for doubt. [Riska v. Railroad, 180 Mo. 168; Karle v. Railroad, 55 Mo. 476; Sluder v. Railroad, 189 Mo. 135.]

On the other hand, while the plaintiff was not a trespasser and had a perfect right to walk on the street, it was his duty, when about to cross the street railway of the defendant, to listen and look both ways for cars which the defendant had the right to run on said street, before attempting to cross its tracks, and as he himself testified that he did not look north after the first car passed him but simply assumed that no other car would follow so closely after the car which had passed, it must be held that he was guilty of negligence in not looking in the direction from which the car came before stepping upon the track. In Bunyan v. Railroad, 127 Mo. l. c. 18, it was said: "The duty of one approaching the

track of a railroad, whether cars are operated thereon by steam, cable or electricity, to use reasonable precaution to ascertain the approach of cars, and to avoid injury therefrom, is so well settled in this State, that further consideration is deemed unnecessary. [Boyd v. Railroad, 105 Mo. 371; Hicks v. Railroad, 124 Mo. 115, and cases cited.]'' But granting that the plaintiff was negligent in stepping upon the track of the defendant without looking north to see whether another car was approaching, does it follow that his negligence was the proximate cause of his injury, or did that fact alone debar him of a recovery in the light of all of the testimony in the case? It is insisted by counsel for the defendant that his stepping upon the track was so shortly before the car struck him, that the motorman could not have avoided injuring him by the exercise of ordinary care after he discovered the danger in which plaintiff had negligently put himself. Giving full credence to the testimony in behalf of the plaintiff, we do not think the court was justified in sustaining the demurrer to the evidence. When it is considered that the car which struck plaintiff was 120 feet behind the car which passed him, and that plaintiff only had to take two steps to bring him to the track, and that he was in the full glare of an electric light with nothing to obstruct the view of the motorman if he had been observing that careful lookout, which not only the ''vigilant watch ordinance'' requires, but which ordinary prudence demands at the hands of those who use powerful and dangerous agencies on our public thoroughfares in order that they shall not injure others who have an equal right to the use of the highway, the injury to plaintiff could have been avoided if the motorman had sounded his gong, and slackened the speed of his car. It is true there is evidence from the plaintiff that he was struck almost immediately after stepping into the track, but it must be remembered that the plaintiff was naturally excited, and that he was knocked senseless by the car, and the

triers of the fact could have made due allowance for the
inability of the plaintiff to measure the exact time he
was on the track before he was struck when the evidence
of the disinterested witness, Mrs. Foster, is taken into
consideration, to-wit, that she had walked along the
front of four houses in the interval between the passing
of the two cars, and that the evidence showed that the
car which struck the plaintiff was 120 feet behind the
first car and the plaintiff stepped immediately upon the
track after the first car passed him.  We think it was a
question of fact for the jury to have found whether the
motorman could not by the exercise of ordinary care
have seen the plaintiff on the track or going upon it in
ample time to have avoided running over him. The evi-
dence tends to show that if the motorman had been run-
ning his car at a rate not exceeding eight miles an hour,
he could have stopped within the space of 70 feet.  That
in the present state of the evidence the motorman made
no effort whatever to check his car or to warn the plain-
tiff of his impending danger growing out of the exces-
sive or unlawful rate at which he was running, there
cannot be two opinions on the face of  the record, nor
was the motorman justified in disregarding all the laws
of prudence merely because plaintiff was not between
the tracks.  The ordinance required him to keep an out-
look not merely for those persons who were on the
track, but for those moving toward it with the evident
purpose of going upon it, and the evidence shows that
the plaintiff was constantly moving in the direction of
the track even before he started upon it, and he was in
the clear light of an electric lamp at the crossing. Under
these circumstances, in our opinion, it was the duty of
the circuit court to have sent the case to the jury with
the instruction that even though the jury found that the
plaintiff was guilty of negligence in not looking north
for the car which struck him, before stepping upon the
track, yet if they further found from the evidence that
after the plaintiff was guilty of said negligence, the

agents, servants and employees of defendant in charge of the car, discovered, or could have discovered by the use of ordinary care, his condition, and the danger of the same, if it was dangerous, and could have avoided injuring him by the use of ordinary care, and failed to do so, then such negligence of such plaintiff is no defense in this action.  [Koenig v. Railroad, 173 Mo. 723-4; Sullivan v. Railroad, 117 Mo. 214; Railroad v. Bodemer, 139 Ill. 596; Guenther v. Railroad, 95 Mo. 286; Reardon v. Railroad, 114 Mo. 384; Bluedorn v. Railroad, 108 Mo. 439.]

From the evidence in this case, we think it is plain that the motorman either saw the plaintiff and recklessly disregarded all the  rules of prudence and humanity in running him down, or if he did not see him, his failure to do so was owing to a reckless disregard of ordinary care in keeping a lookout for pedestrians who had a right to use the street as well as the railway.

We agree with the majority of the Court of Appeals that it cannot be said upon the testimony in this case as a matter of law that plaintiff's negligence was the direct cause of his injury, and that there was abundant evidence from which the jury, under proper instructions, might well have found that the plaintiff's injury was the direct result of the excessive and unlawful rate of speed at which the car was being run and the negligence of the motorman in making no effort to warn the plaintiff by sounding the gong or check the car after he saw, or by the exercise of  ordinary care  might have seen, him in peril.

Accordingly the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Brace, C. J., Burgess, Fox* and *Lamm, JJ.,* concur; *Marshall* and *Valliant, JJ.,* concur in the result.