## BARRIE, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, June 5, 1906.

1. **STREET RAILWAYS:** Negligence: Last Chance. Where plaintiff negligently drove upon the street car track of defendant and the evidence tended to show that the motorman in charge of defendant's car had the car under control when about eighteen feet from the plaintiff's wagon and that he suddenly turned on the power when about six feet away, thinking the plaintiff would be able to get out of the way, and collided with the plaintiff's wagon producing the injury sued for, the evidence was sufficient to submit to the jury the question of whether the defendant was guilty of negligence under the last chance rule.

2. ———: ———: ———: Res Adjudicata. A decision on the first appeal as to the sufficiency of the evidence to submit an issue to the jury is on a second appeal *res adjudicata*, where the evidence was substantially the same, and will control the decision as to the same point.

3. **PRACTICE:** Instruction: Point Covered. In an action for personal injuries on account of negligence of the defendant, where the defense was contributory negligence, an instruction placing the burden upon the defendant to prove contributory negligence by the preponderance of the evidence, and upon the plaintiff to prove the negligence of the defendant without using the word "preponderance," was not prejudicial to the defendant, where other instructions sufficiently covered the point.

4. ———: ———: Numerous Instructions. Where in such case eleven instructions were given for the defendant covering every phase of the case, the refusal of the twelfth instruction was justified on the ground of multiplicity of instructions.

5. **STREET RAILWAYS:** Last Chance: Duty of Motorman. Where one goes negligently upon the track of a street railway, the duty of the motorman under the last chance rule is not limited to efforts to avoid a collision after there is actual danger of collision, but it is his duty to use all the appliances at hand to avoid a collision as soon as he sees, or by the exercise of due care can see, one approaching the track with the apparent intention of crossing.

Barrie v. Transit Co.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Boyle & Priest, George W. Easley* and *George T. Priest* for appellants.

(1) The court erred in overruling defendant's demurrer offered at the close of plaintiff's evidence. The evidence conclusively shows that the injuries complained of by the plaintiff, were the direct result of his own negligence and he cannot recover. Roenfeldt v. Railroad, 180 Mo. 554, 79 S. W. 706; Moore v. Railroad, 176 Mo. 528, 75 S. W. 672; Zumault v. Railroad, 175 Mo. 288, 74 S. W. 1015; Reno v. Railroad, 180 Mo. 469, 79 S. W. 464; McGauley v. Railroad, 179 Mo. 583, 79 S. W. 461; Sepetowski v. Railroad, 102 Mo. App. 110, 76 S. W. 693; Payne v. Railroad, 136 Mo. 534, 38 S. W. 308. (2) The court erred in giving the instruction numbered 2 on behalf of the plaintiff: Instructions numbered 2 and 5 are separate and independent declarations of law, and are directly in conflict — one of them declaring the law correctly, the other erroneously—and we are unable to say by which one the jury were guided. This instruction constituted such error as warranted the court in granting a new trial. Imp. Co. v. Ritchie, 143 Mo. 612, 45 S. W. 634; Shepard v. Transit Co., 189 Mo. 373, 87 S. W. 1007; Reno v. Railroad, 180 Mo. 489, 79 S. W. 464.

*Marion C. Early* for respondent.

(1) Under the law and the evidence the cause was properly submitted to the jury. Barrie v. Transit Co., 102 Mo. App. 87, 76 S. W. 706; Guenther v. Railroad, 108 Mo. 18, 18 S. W. 846; Schmidt v. Railroad, 149 Mo. 270, 50 S. W. 921; McCormack v. Monroe, 64 Mo. App.

197; Cooney v. Railroad, 80 Mo. App. 226; Morgan v. Railroad, 159 Mo. 262, 60 S. W. 195. (2) The evidence being substantially the same as at the former trial, except more accurate, and the rule of law having been determined upon the demurrer, the judgment then pronounced is no longer open to review. Fuchs v. St. Louis, 133 Mo. 168, 31 S. W. 115, 34 S. W. 508; Printing Co. v. Protective Ass'n, 81 Mo. App. 469. (3) The motorman, in charge of the car, was bound to keep a vigilant watch ahead, and upon the first appearance of danger was bound to stop the car within the shortest time and space possible. The instructions when read together are consistent and every point was fairly submitted to the jury. The instructions were favorable to the defendant and there is nothing to warrant the assumption that under the evidence and instructions the jury were mislead. Hughes v. Railroad, 127 Mo. 447, 30 S. W. 127; Burdoin v. Trenton, 116 Mo. 358, 22 S. W. 728; Henry v. Railroad, 113 Mo. 525, 21 S. W. 214; Meade v. Railroad, 68 Mo. App. 92; Ephland v. Railroad, 57 Mo. App. 147; Shaw v. Dairy Co., 56 Mo. App. 521; Distilling Co. v. Cretch, 45 Mo. App. 169.

STATEMENT.—The plaintiff was the driver of a milk wagon and while driving across defendant's street car tracks on Jefferson avenue in the city of St. Louis near Geyer avenue, the rear wheel of his wagon was struck by a southbound car, whereby the wagon was overturned and he was injured. Hence this suit. The case was here before and is reported. [Barrie v. Transit Co., 102 Mo. App. 87.]

The facts developed upon the part of the plaintiff in the trial court are to the effect that the plaintiff, with a horse and covered wagon laden with milk cans, was on his route delivering milk on the day of the injury. It was in the day time and he drove out of an alley near Geyer on Jefferson avenue, and across the defendant's

street car tracks, of which there are two, one for the northbound and one for the southbound cars on Jefferson avenue, his purpose being to supply a milk customer on the west side of said avenue. When he drove out of the alley and onto the street, he was sitting in his covered wagon on the seat usually occupied by the driver, and before driving upon the track, he listened for a car and looked from under the cover of his wagon both north and south for some distance, about one hundred feet, to ascertain if there was a car approaching in near proximity, and not seeing a car, proceeded without stopping his horse to cross the track. It is in evidence that had he desired to do so, he might have seen the car for at least three blocks. The space between the curb at the alley where he looked and listened for a car and the east rail of the car track was about ten or twelve feet, and his horse was just about stepping upon the car track at the time he peered out from under the covering, looking for a car. He desired to go to the southwest, he was driving slowly or in a walk in that direction and crossed the tracks at an angle of about forty-five degrees. The street was rough at that point, the track rails extending above the level of the street, and by so crossing, he could more successfully convey the milk without jostling the lids off of the cans. While his wagon was still partially on, but in the act of leaving the west track, he heard a noise behind him, and looking around, saw the car within ten feet of his wagon. He whipped up his horse in an endeavor to escape but the car struck the rear wheel of his wagon between the hub and the felloe, whereby the wagon was overturned and his leg was broken and other painful injuries inflicted upon him. He heard no gong sounded and did not observe the motorman making any effort to stop the car at the instant he looked around.

Mr. Tobias, for plaintiff, testified that he was a passenger sitting on the front seat of the car which collided with the wagon. The car was going at an ordinary rate

of speed, when, within eight or ten feet of the plaintiff's wagon, the motorman checked the speed. The body of the milk wagon was then on the track in front of the car and in the act of leaving the same. Just at that time, he said, in speaking of the car: "It slowed up to go slower but kept on going." After it had collided with the wagon the car then went backwards.

Witness Hartman testified for plaintiff that he saw the accident; that when the car was about eighteen feet from the plaintiff's wagon the motorman commenced to put on the brake and slow down the car; that the wagon was then in the act of crossing the track, but when the car was within six or eight feet of the wagon, he turned on the power in full force and collided with the rear wheel before it became clear of the car in its southward course. His testimony on this question is as follows:

"Q. In what manner did the motorman begin to stop the car when he began to turn on the brake? Now, state to the jury as near as you can, just what the motorman did? A. He started to turn on the brake when he was about sixteen or eighteen feet from the wagon.

"Q. You have told us that. Just explain to the jury or tell the jury what efforts did he make before he struck the wagon until he started to stop? A. He didn't attempt to stop it at all until he got within that distance.

"Q. State what effort he made as near as you can —the manner in which he applied that brake? A. He slacked it down slow when it was about that distance, then all of a sudden he turned it at full force.

"Q. Where was he when he turned it at full force? A. Within six or eight feet of the wagon.

"Q. Then when he got near the wagon he turned it at full force? A. Yes, sir."

The defendant introduced no evidence.

The court refused a peremptory instruction to find the issues for the defendant. The court submitted the

case on behalf of plaintiff in a proper instruction upon the assumption that the plaintiff was negligent in failing to exercise due care to discover the approach of the car prior to going upon the track, and instructed, in effect, that the defendant was liable to him only in the event it had a last clear chance to avert the injury by the use of the appliances at hand, and neglected to do so after his position of danger became apparent to, or by the exercise of ordinary care, could have been discovered by the motorman, and that defendant's negligence was the sole and proximate cause of the injury without that of plaintiff directly and proximately contributing thereto.

Among other instructions, the court gave the following at the instance of the plaintiff:

"The court instructs the jury that the burden of showing that plaintiff was guilty of negligence contributing to his injuries is upon the defendant company to establish by a preponderance of the evidence. But you are also instructed that the burden is upon the plaintiff to prove by the evidence that the defendant was guilty of negligence which was the proximate cause of the injuries complained of."

The answer of the defendant, besides a general denial, contained a plea of contributory negligence on the part of the plaintiff and all phases of the case on the theory of plaintiff's contributory negligence were properly submitted to the jury in numerous instructions given at the instance of the defendant, as well as the doctrine that if the injury resulted from the concurring negligence of both parties, plaintiff could not recover. In all, the court gave eleven instructions on behalf of the defendant, presenting every phase of the case from its standpoint, among which instructions given on behalf of defendant, was the following:

"Plaintiff alleges as his cause of action that while he was driving across Jefferson avenue, in the city of

St. Louis, Missouri, from the east to the west side thereof, at a point near the intersection of Geyer avenue, a car belonging to the defendant, then and there in charge of defendant's agents, approached at a high rate of speed from the north, moving in a southerly direction without sounding a gong or in any way signaling its approach, and that plaintiff was not aware of the approach of said car until it was near upon him; and that after plaintiff's dangerous position became known to the defendant's said agents, or by the exercise of ordinary care, ought to have become known to them, they made no effort to stop the car or check its speed, and failed to sound the gong, whereby his wagon was struck and he was injured.

"The answer of defendant denies each and all of these allegations, and also avers that plaintiff's alleged injuries, if any, were caused by his own own carelessness and negligence contributing thereto, by the plaintiff, without looking or listening for an approaching car going onto defendant's track in such close proximity to an approaching car that the same came into collision with him, when the plaintiff might, before going onto said track, by looking, have seen, and by listening, have heard said approaching car in time to have remained off said track until said car passed him, and thereby have avoided a collision with said car.

"The jury are instructed that the burden is on the plaintiff throughout the whole case to show to the satisfaction of the jury by the greater weight of the evidence, that the acts of negligence which he alleges, or some one of them, are the efficient and proximate cause of the injuries which he received, and that without such negligence on the part of defendant's agents he would not have been injured, and unless the plaintiff has so proved to the satisfaction of the jury by the greater weight of the evidence, that the acts of negligence or some one of them which he claims the defendant's agents were

guilty of, was the cause of his alleged injuries, the verdict should be for the defendant."

The court refused the following instruction:

"The jury are instructed that while the duty of watching for persons and vehicles on or near the tracks devolves upon those in charge of the car, nevertheless, they have the right to assume that persons on the street will be prudent and keep a reasonable lookout for the approach of cars, and if the motorman in charge of the car at the time of plaintiff's alleged injuries saw the plaintiff driving on the street near the track, he had a right to assume that he would be on the lookout for a car, and that he would not drive on or so near the track as to expose himself to the danger of a collision, and the defendant's motorman had a right to move his car forward upon such assumption, until it became apparent, or by the exercise of ordinary care ought to have become apparent to him that plaintiff did not know of the approach of the car, or that he intended to drive immediately in front thereof.

"And in this connection the jury are further instructed that by the allegation in the petition that defendant's agents in charge of said car were aware of plaintiff's dangerous position is meant that the plaintiff was in a position of peril a sufficient length of time to enable the said motorman in charge of the running of the car, by the exercise of ordinary care and by the use of such instrumentalities as he had on hand for that purpose, to enable him to stop the car and avoid the collision. In other words, until the plaintiff was upon the track, or in actual danger of collision with the car by going forward, the motorman was not obliged to bring the car to a stop."

After a verdict and judgment for the plaintiff, defendant appeals, assigning as error; first, that the court should have given its peremptory instruction to find the issues for the defendant; second, the giving of plaintiff's

second instruction, supra; and third, the refusal of its instruction copied in the statement. The assignments will be noticed in the opinion.

NORTONI, J. (after stating the facts).—1. The first point urged for a reversal of the judgment is that the court erred in its refusal to peremptorily direct a verdict for the defendant. It is true that the plaintiff's evidence showed that he could, by exercising more care than he did, have seen the approaching car for two or three blocks, and possibly have heard the same for nearly one block at the time he peered from under his wagon-cover and looked and listened therefor. Yet by looking for one hundred feet in either direction and neither seeing nor hearing its approach, he evidently satisfied himself that no car was then in near proximity and that it would be safe for him to proceed to cross the tracks. But it is entirely unnecessary for the court, on this record, to pass upon the question as to whether ordinary prudence and care would require him to survey the car tracks for a distance beyond the one hundred feet in either direction viewed by him before driving thereon, or to listen more attentively for an approaching car, inasmuch as the case was submitted to the jury upon the theory that plaintiff was first negligent in failing to exercise ordinary care in that behalf and it was only for the last breach of duty on the part of the defendant, the negligence of the plaintiff after he became in his situation of peril being in no wise proximate to nor concurring in his injury, that the defendant could be held to respond therefor. There is ample evidence in the record to sustain a recovery on this theory of the case. It is palpable that the motorman, by exercising ordinary care in the discharge of his duty in the premises, could have seen the plaintiff on or about to go upon the tracks in time to have averted the injury by the proper employment of the appliances therefor at hand. The

motorman could have seen the plaintiff in the act of driving toward and across the track at all times after he drove out of the alley and toward the tracks. At the time plaintiff looked for a car, his horse was within two feet of the car tracks, so it is said in the evidence, and the fair inference is that the car was more than one hundred feet distant at the time, or the plaintiff could have seen it. Plaintiff then being in the act of driving upon the track and in a position of danger from the approaching car under the control of the motorman, it became imperative on the motorman in discharging that duty owing from his master to the plaintiff, to employ the appliances at hand, in the exercise of ordinary care, to the end that the car should be under such control as to avert the threatened collision, for under the law of this State, it was his duty not only to exercise ordinary care to avert the injury after discovering the plaintiff in peril, but it was his duty as well to exercise ordinary care to discover the plaintiff when approaching the track with the apparent intention to drive upon and across the same. The evidence tended to prove that the motorman was negligent with respect to this duty, and moreover, the evidence (that of Hartman) is to the effect that the motorman did actually discover plaintiff's position of peril in time, no doubt, to have prevented a collision. Hartman said, and the same inference arises from the testimony of Tobias, that when the car was about eighteen feet from plaintiff, the motorman "slowed it (the car) down slow when it was about that distance; then of a sudden he turned it at full force." Where was he when he turned it at full force? A. Within six or eight feet of the wagon." From this, the only legitimate inference that can possibly arise is that the motorman had the car under control and when, within six or eight feet of the wagon, thinking that the plaintiff would be able to get out of the way, negligently turned on the power, propelling the car for-

ward, just in time to strike the rear portion of the rear wheel, thereby causing the wagon to overturn and plaintiff's resultant injuries. Here is abundant evidence authorizing the submission of the case to the jury under the last clear chance doctrine, as announced by the Supreme and Appellate courts of the State, and the court was justified in refusing the peremptory instruction. [Guenther v. Railway, 95 Mo. 286; s. c., 108 Mo. 18, 18 S. W. 846; Morgan v. Wabash Ry. Co., 159 Mo. 262, 60 S. W. 195; Moore v. St. Louis Transit Co., — Mo. —, 92 S. W. 390; Klockenbrink v. Railway, 172 Mo. 678, 72 S. W. 900; Klockenbrink v. Railway, 81 Mo. App. 351; Cooney v. Railway, 80 Mo. App. 226; Moore v. Transit Co., 95 Mo. App. 728, 75 S. W. 699; Barrie v. Transit Co., 102 Mo. App. 87, 76 S. W. 706.]

2. We have thus noticed the evidence to demonstrate the correct action of the trial court in refusing the peremptory instruction on its merits. But aside from this, it may be said that this question is no longer open for review in this case. The identical question on the identical facts in all material respects, between the identical parties in this same case was presented on a prior appeal, wherein it was adjudged that the evidence was sufficient to remove the case beyond the province of the court as a question of law and within the province of the jury as a question of fact. [See Barrie v. Transit Co., 102 Mo. App. 87.] If the facts, as developed in the former trial, as appears from the report of the case, and those in the record now before us, are to be differentiated at all, it is in favor of the plaintiff here, and under these circumstances, the rule is well established that on a second appeal, as in this case, where the evidence is substantially the same, without material variance from that before the court in the prior adjudication, the previous ruling will be considered as conclusive for the purpose of the case and the question treated thereafter as *res adjudicata* unless it appears that the court overlooked

a controlling statute or decision and therefore erred in its opinion as to the legal effect of the facts on which the judgment of the court was pronounced. [Baker v. Railway Co., 147 Mo. 140-152, 48 S. W. 838; Hesse Ptg. Co. v. Protective Assn., 81 Mo. App. 467.

3. The court instructed the jury, at the instance of the plaintiff: "The court instructs the jury that the burden of showing that the plaintiff was guilty of negligence contributing to his injuries is upon the defendant company to establish by a preponderance of the evidence. But you are also instructed that the burden is upon the plaintiff to prove by the evidence that the defendant was guilty of negligence which was the proximate cause of the injuries complained of." The defendant complains that the giving of this instrucion was error in this, that while the first clause thereof, which informs the jury that it devolved upon the defendant to establish plaintiff's contributory negligence by a preponderance of the evidence, is proper enough, the second clause, which informs the jury as to the measure of proof required on behalf of the plaintiff, is error in omitting to employ the word "preponderance" in connection with the word "evidence." It is argued that while the defendant was required to establish plaintiff's negligence by a preponderance of the evidence, the instruction was especially unfair to it in this case inasmuch as it placed no witness upon the stand in defense, and that the instruction was calculated to mislead the jury in believing that any amount of evidence, whether a preponderance or not, was sufficient to establish negligence against the defendant, whereas the greater burden of proof was devolved upon to establish the negligence against the plaintiff.

The instruction is subject to criticism, but in this case, where the defendant placed no witnesses on the stand and rested its rights entirely upon the evidence as adduced by plaintiff's witnesses, we are unable to ap-

preciate the force of defendant's argument, for there was no conflict in the proof and plaintiff's case was uncontradicted. All the evidence in the record tended to prove that the motorman was negligent, and no one, not even the motorman himself, was placed on the stand to controvert it for defendant, and under these circumstances, when coupled with the fact that the jury were properly instructed on the question on the part of the defendant, and were further instructed at the instance of the plaintiff that all of the instructions of the court must be read together and taken as their guide, the jury were certainly not misled as to the fact that the burden was on the plaintiff to establish his case by the greater weight or preponderance of the evidence. It will be observed that the portion of the instruction complained of, which omits the word "preponderance" does inform the jury that the "burden" is on the plaintiff, and this, when considered by the jury in connection with that given on the same subject for defendant, and together with the instruction to the effect that it was the duty of the jury to take all the instructions and read them together as their guide in the case is quite sufficient to persuade us that the jury were not likely to be misled thereby.

In the first instruction given on behalf of the defendant, the jury were told as follows:

"The jury are instructed that the burden is on the plaintiff throughout the whole case to show to the satisfaction of the jury, by the greater weight of the evidence, that the acts of negligence which he alleges, or some one of them, are the efficient and proximate cause of the injuries which he received, and that without such negligence on the part of defendant's agents he would not have been injured, and unless the plaintiff has so proved to the satisfaction of the jury by the greater weight of the evidence, that the acts of negligence, or some one of them, which he complains the defendant's

agents were guilty of, was the cause of his alleged injuries, the verdict should be for the defendant."

Here, in most positive terms, the jury were repeatedly told that unless the plaintiff proved his allegation by a greater weight of the evidence, he could not recover, and further, the jury were instructed (plaintiff's instruction No. 4) : "The instructions of the court are all to be taken and read together, and the law therein laid down, applied by the jury to the facts of the case," etc. Ever since the Supreme Court, in Owens v. Railway Co., 95 Mo. 169 adopted the views of Judge Black, expressed in his dissenting opinion in Sullivan v. Railway Co., 88 Mo. 169-188, overruling the Sullivan case, the rule has been uniformly adhered to in this State that the error in one instruction will not constitute reversible error if the question is properly covered in other instructions so that, when taking the instructions together as a whole, they present the issues fairly and are not calculated to mislead and are not misleading to the jury. Under the authority of these cases, we are persuaded that the error in the instruction complained of, in view of the others given, was not such as to mislead the jury or affect the substantial rights of the defendant. [Henry v. Railway, Co., 113 Mo. 526, 21 S. W. 214; Hughes v. C. & A. Ry. Co., 127 Mo. 447, 30 S. W. 127; Burdoin v. Trenton, 116 Mo. 358, 22 S. W. 728; Owens v. Railway Co., 95 Mo. 169, 8 S. W. 350; Meades v. Railway Co., 68 Mo. 92; Ephland v. Railway Co., 57 Mo. App. 147; Shaw v. Dairy Co., 56 Mo. App. 521; Nelson Distilling Co. v. Creath, 45 Mo. App. 169.]

4. The court gave, at the instance of defendant, eleven instructions, covering in all seven pages of printed abstract in this case where the issues were few and simple and refused one instruction, number twelve, set out in the statement supra. Error is assigned because of its refusal. In those given, the court had submitted every possible phase of defendant's theory of the case and cov-

ered all matters incidental thereto and was therefore amply justified in refusing the twelfth instruction requested, if on no other ground than that a multiplicity of instructions would tend rather to confuse than enlighten the jury on the issues and law of the case. [Renshaw v. Firemen's Ins. Co., 33 Mo. App. 394; McAllister v. Barnes, 35 Mo. App. 668; Crawshaw v. Sumner, 56 Mo. 517.] By reference to that instruction, however, it will be noted that after telling the jury a number of things, it concludes: "Or, in other words, until the plaintiff was upon the track or *in actual danger of a collision* with the car by going forward, the motorman was not obliged to bring the car to a stop." This is not the law. The motorman's duty to exercise ordinary care to avoid injuring the plaintiff was not deferred until the plaintiff was "upon the track or in *actual danger* of a collision with the car by going forward "but, on the contrary, it became the motorman's duty to exercise ordinary care to avoid a collision by using the appliances at hand as soon as he saw, or by the exercise of due care, could have seen the plaintiff approaching the track apparently intending to pass before the car and thus become imperiled. [Moore v. Transit Co., — Mo. —, 92 S. W. 390 and cases supra.] The instruction told the jury that the motorman was under no obligation to act until the plaintiff was upon the track or in *actual danger* of a collision going forward. If the duty to exercise ordinary care to save human life is thus deferred by the law until actual danger of collision by going forward, then the principle which requires the exercise of ordinary care for the protection of those going toward the track with the apparent intention of walking on or across the same, is of no force. In our opinion, the court very properly refused this instruction for the reason given.

Finding no reversible error in the record, the judgment will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.