## A. COLE, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, November 5, 1906.

1. **STREET RAILWAYS: Rights in the Street: Negligence: Warning.** Public streets are for the use of all classes of persons, and no individual or class possesses any superior right of way over others; the strong has no right to force others out of his way, and street cars run at a dangerously high rate of speed on a busy thoroughfare, without warning or control, where others are rightfully using such street are culpable.

2. ——: ——: **Contributory Negligence : Presumptions.** A traveler may assume that a motorman of a street car will not be negligent in the speed of his car and will give proper warnings and have his car under control, but such presumptions do not relieve him of the duty to make reasonable use of his senses to guard his own safety in crossing a street car track; and where his view is unobstructed he cannot shut his eyes and rely on the presumption of care on the part of the car company.

3. ——: ——: ——: **Humanitarian Doctrine.** Where a motorman of a street car can plainly see that a traveler is unconsciously in a perilous condition, and rushes on to a collision without giving warning or abating speed, he is not only negligent but wanton and willful, and a right of action exists in favor of those injured by the collision notwithstanding their contributory negligence in not looking out for the car, since the determinative question is, Did the motorman use ordinary care to ascertain the peril and avoid the injury after its discovery? [Cases considered.]

4. ——: ——: ——: ——: **Motorman's Duty.** A motorman, however, is not compelled, if he uses reasonable care, to stop his car whenever he sees a person on or near the track, since he may assume until the contrary appears that others will act with ordinary care; and it is only when there is something in the appearance of such persons indicating that they are unaware their negligence is placing them in danger that the motorman should reduce speed or stop to avoid injury.

5. ——: ——: ——: ——: **Instruction.** Where the evidence shows the only issue is on the humanitarian doctrine of negligence it is error to submit the case on the theory of the defendant's negligence or plaintiff's contributory negligence.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Ben T. Hardin* for appellant.

(1) The court erred in overruling the demurrer interposed by the defendant at the conclusion of plaintiff's evidence for the reason that on the pleadings and the evidence herein plaintiff cannot, under the law, recover. Green v. Railway, 90 S. W. 805; Schmidt v. Railway, 90 S. W. 138; Guyer v. Railroad, 174 Mo. 350; Hartman v. Transit Co., 112 Mo. App. 439; Barrie v. Transit Co., 102 Mo. App. 87; Fanning v. Transit Co., 103 Mo. App. 157. (2) The court erred in giving instructions 1, 2, 3, 4 and 5 as requested by the plaintiff. Hamilton v. Railway, 89 S. W. 893; Kohr v. Railway, — Mo. App. —. (3) The court erred in refusing to give instruction numbered 14 as requested by the defendant. Shepherd v. Railroad, 189 Mo. 373.

*T. B. Buckner* for respondent.

(1) The court did not err in overruling defendant's demurrer to the testimony. · The trial court, having allowed the case to go to the jury and the jury having found the issues of negligence and contributory negligence, this court is bound by that finding. Reed v. Railroad, 107 Mo. App. 258; Meng v. Railway, 108 Mo. App. 553; Campbell v. Railway, 175 Mo. 161; Railway v. Ives, 144 U. S. 417; Railroad v. Griffith, 159 U. S. 603; Latson v. Railroad, — Mo. —, 91 S. W. 109. (2) The trial court, however, and the jury, made the right finding in the case. Authorities, paragraph 1; Esler v. Railroad, 109 Mo. App. 580. (3) As to the facts and law of this case, respondent relies upon the case of Meng v. Railroad, above cited, and adopts the brief filed by

respondent in that case, and authorities there cited, as the brief in this case, and·as being absolutely conclusive of the case at bar, and all questions raised by appellant. (4) With all due reference to counsel for appellant, the authorities cited by them do not sustain their contention. The facts in cases cited are clearly distinguished from the case at bar.

JOHNSON, J.—Plaintiff was injured by the collison of a trolley car operated by defendant on one of its street railway lines in Kansas City with a wagon in which plaintiff was riding and this suit is for the recovery of the damages sustained. The cause of action pleaded is founded on the negligence of defendant in operating the car. The answer, in addition to a general denial, contains a plea of contributory negligence. Plaintiff recovered judgment in the sum of $400 and defendant appealed.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given and our first consideration will be the questions arising under that contention.

The injury occurred on the 26th day of February, 1904, in the daytime at the crossing of Main and Fourteenth streets. Both of these thoroughfares are public streets and their intersection is in the business district of Kansas City. Main street runs north and south and is seventy feet wide. Along the midway of its pavement for vehicles which is forty-six feet wide defendant operates a double track street railway. The tracks are five feet apart and each is five feet wide. The east track is used for northbound cars and the other for cars going in the opposite direction. The team and wagon were owned by plaintiff but an employee of plaintiff was driving. The wagon carried a load of coal weighing about 9,000 pounds. It approached the crossing from the east on Fourteenth street and when the seat on which plaintiff

and the driver were seated was at or near the east line of Main street the team was stopped to await the passing of a northbound car. Another loaded coal wagon going in the same direction was on the north side of plaintiff's wagon and four or five feet in advance thereof. Both stood still until the car passed and then started forward to the crossing, the other wagon still a few feet ahead.

A team and wagon eastbound on Fourteenth street had stopped on the opposite side of the tracks for the car to pass after which it proceeded over the crossing. About the time plaintiff's wagon started he looked to the north and saw a southbound car which had stopped at the Thirteenth street crossing in the act of starting forward. That car had about 450 feet to travel to reach the crossing while plaintiff's wagon could cross and pass beyond danger of collision in a distance of from forty to forty-five feet. Plaintiff admits he took no further notice of the car and accounts for his conduct by saying he had no reason to think it would travel so fast and would overtake the wagon on the crossing or that the motorman, whose vision was unobstructed, would deliberately run into the wagon. The two wagons traveled towards the crossing at a speed of about two miles per hour and the car advanced at about twenty miles per hour. No bell was rung nor was any effort made to check the speed of the car and plaintiff did not know it was upon him until the moment of the collision. First the rear end of the other wagon was struck and thrown against plaintiff's wagon, then the car crushed into the middle of plaintiff's wagon and the injury resulted.

The foregoing statement embodies the facts detailed by plaintiff and his witnesses. On the part of defendant the evidence tends to show that the southbound car was in the middle of the block and was running at a speed not exceeding ten miles per hour when the two

wagons started towards the crossing; that so soon as the motorman saw the drivers intended to cross ahead of the car he rang his bell and applied the air brakes but on account of running down grade and having wet rails to run over he could not stop in time to avoid the collision though he did succeed in materially reducing speed.

Adopting the facts most favorable to the cause of action asserted by plaintiff which we must do in reviewing the action of the trial court in overruling the demurrer to the evidence, the negligence of defendant is indisputable. The public streets of a city are for the use of all classes of people and no individual or class of individuals possesses any superior right of way over that which others may exercise. The fact that a person may be strong enough to overcome all others in a physical contest gives him no right to force them to keep out of his way and when he uses the strong hand he becomes liable for the injurious consequences to others. In running its car at a dangerously high rate of speed along a busy thoroughfare without giving any warning and without attempting to put it under reasonable control as it neared the crossing where people were rightfully using the street, defendant's conduct may be likened to that of a strong man who forces his way by physical violence and its culpability is so apparent that further discussion of this branch of the case would be superfluous.

But plaintiff's actions as stated by himself likewise are censurable in law. In approaching the crossing of street car tracks it was his duty to look and listen for approaching cars. There was nothing to obstruct his view and had he deigned to cast one glance northward immediately before the horses entered the sphere of danger he would have seen the car not over two hundred feet away coming at the rate of twenty miles an hour and being recklessly operated and could have

stopped his team. He admits there was nothing else to engross his attention and the only excuse he offers for his failure to observe the movement of the car is that when he noticed it at the Thirteenth street crossing he .assumed it would not be carelessly handled to his injury. He had the right to indulge in the presumptions that the motorman would not run the car at a negligently high rate of speed; that he would sound the bell as the car neared the crossing and would reduce its speed to avoid a collision, but this did not absolve him from the performance of his duty to observe the advancing car. A person approaching a railroad crossing whether in the country or in the city is not permitted to rely entirely on such presumptions, but must make reasonable use of his senses to guard his own safety and the failure to do this is negligence. The duty thus to protect one's own safety continues until the crossing has been traversed. A person in the exercise of reasonable care who is unhindered and whose view is unobstructed cannot take a last look at some distance from the crossing whether it be twenty feet or two thousand feet away and then shut his eyes and go blindly forward relying implicitly on the presumption that the servants of the railroad company will not be negligent in the running of its trains or cars. We therefore have before us a case of mutual negligence and that of plaintiff will suffice to deprive him of any right of action unless we find the evidence justifies the application of what is known as the "humanitarian" rule.

The motorman admits he saw the wagons when the car was in the middle of the block, a distance of over two hundred feet from the crossing. The evidence of plaintiff tends to show that the rails were dry; that the car could have been stopped in a distance of from seventy-five to one hundred feet and that when the car was in the middle of the block plaintiff's team had just reached the danger line, the other team was on the cross-

ing both were going forward and both wagons were unwieldy from the heavy loads they carried. None of the occupants of either wagon appeared to be conscious of the fact that the car was rapidly nearing the crossing. All of these conditions and circumstances were obvious and the motorman who observed them must have known of plaintiff's peril and possessing this knowledge his act in rushing to a collision without giving warning and with no abatement of speed was not only negligent but was wanton and willful and under any definition of the humanitarian rule to be found in the books it should be applied to sustain a right of action in favor of plaintiff. In the recent case of Moore v. Transit Co., — Mo. —, 92 S. W. 390, the Supreme Court in Banc expresses the view that although a person may be negligent in reaching a position of peril in his attempt to cross street railroad tracks such negligence is no defense to an action brought by him against the railroad company to recover his damages resulting from a collision when it is made to appear that his peril was known or by the exercise of reasonable care could have been known to the operators of the car in time for them to have avoided the collision had they made a reasonable effort to that end.

The paramount duty of a motorman who runs over the streets of a city at comparatively high speed a vehicle so heavy and powerful as the modern street car is to be on the constant lookout for persons whose safety may be endangered. He owes this duty not only to the careful and prudent but to the careless, the incompetent and the helpless for all of these classes throng the public streets and a humane man would and should be as reluctant to injure one as the other. For a motorman to be inattentive to the way ahead of him is so palpably negligent that it partakes of the nature of a reckless and wanton act. Therefore a defendant in an action of this character will not be heard to say that its motorman

did not see the situation of the injured person where it was open to his view nor did not realize the peril where the indications would have disclosed it to any reasonable mind. Charged with the knowledge of the peril of another that could have been obtained by the use of ordinary care a failure on the part of a motorman to make every reasonable effort to avoid injuring the endangered person would be in the highest degree wrongful, since it would be negligence committed with the knowledge that another certainly and immediately would be injured thereby. The principles of right and justice do not tolerate the idea that the negligence of the person imperiled involved in his act of placing himself in position to be injured without giving proper heed to his own safety can co-operate with the negligence of one who comprehending his danger or being in a position to comprehend it by the use of ordinary care and having at hand the means and opportunity of avoiding it fails to reasonably employ them and by such failure inflicts an injury. Such negligence engrosses the entire field of culpability and eliminates contributory negligence as a factor in the production of the injury. It logically follows from the principles stated that the issue of negligence in the performance of the humanitarian duty must be governed by the rules applicable to ordinary negligence. The determinative question in all such cases is, did the operators of the car use ordinary care to ascertain the peril of the plaintiff and to avoid the injury after they discovered it or should have discovered it?

In some of the decisions of the Supreme Court the idea appears to be expressed that in order to find a defendant guilty of a breach of the humanitarian rule the elements of wantonness and willfulness must appear in its conduct, but as we have attempted to show the mere failure to observe ordinary care in situations of this character is of itself a wanton act since it is ab-

horrent not only to fundamental principles of law but to the dictates of common humanity. The views expressed are supported by the weight of authority in this State, including the most recent decisions of the Supreme and appellate courts. [Moore v. Transit Co., supra; Rodgers v. Transit Co., 92 S. W. 1155; Eppstein v. Railway, 94 S. W. 967; Ross v. Railroad, 113 Mo. App. 600.]

It must not be inferred from what we have said that the humanitarian doctrine compels a motorman, if he would act within the bounds of reasonable care, to stop his car every time he sees a person on or near the track ahead of him. He has the right to assume until the contrary appears that others will act with ordinary care and it is only when there is something in the appearance of the person on the track or approaching it to indicate to the observing eye that unaware of the presence of the car he is negligently placing himself in a position of danger and is giving no attention to warning signals that the motorman should reduce speed or stop entirely if necessary to avoid injury. The facts in evidence raised an issue of negligence under the humanitarian doctrine and no error was committed in overruling the demurrer to the evidence.

The judgment however must be reversed and the cause remanded on account of error in the instructions given. Notwithstanding negligence under the humanitarian rule was made an issue by the facts alleged in the petition and their denial in the answer and as we have shown the evidence clearly presented that issue, the instructions entirely ignored it and submitted the case on the issues of defendant's negligence that aided in placing plaintiff in a position of danger and plaintiff's contributory negligence. As we before said plaintiff's own admissions removed his negligence from debatable ground and the court should have treated it as an established fact and as defendant could not be held liable on account of negligence that merely co-operated with

that of plaintiff the only negligence on which plaintiff's cause of action could be predicated was that which the jury might find under the evidence was involved in a breach of the humanitarian duty.

The judgment is reversed and the cause remanded. All concur.