JOSIE CASWELL, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.    December 13, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, & SHELDON, JJ.

*Negligence.    Street Railway.*

In an action against a street railway company under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate by the negligence of the defendant or the unfitness or gross negligence of its agents or servants, it appeared that at an early hour in the morning the intestate was driving a milk wagon from an intersecting street across the tracks of the defendant when his team was struck by a car of the defendant transporting coal to its power house. The evidence warranted findings, that the intestate was in the exercise of due care, that the motorman saw the team shortly before it reached the tracks, and on seeing it tried to stop his car, and that the accident was caused by the failure of the motorman to keep a proper lookout, or to check his car in time, or by both of these things. *Held,* that a trial judge sitting without a jury was right in refusing to find that the negligence of the motorman was gross within the meaning of the statute.

In an action against a street railway company under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate by the negligence of the defendant or the unfitness or gross negligence of its agents or servants, it is right to refuse to make a ruling that "if the motorman of the defendant was operating its car at the time of the accident at a rate of speed in excess of that allowed by law, then that fact is *prima facie* evidence of gross negligence," although this fact in connection with other facts would be evidence of a failure to exercise ordinary care.

A street railway company, although not authorized to engage in the business of carrying freight for others, lawfully may run cars loaded with coal over its tracks for the purpose of supplying its power house.

*Semble,* that an employee of a street railway company, sometimes called the trolley man, whose duty it is to stand at the rear end of a car used for transporting coal to the power house of the company and look out for the trolley strings, also to turn the switches, and to load and unload the coal, may be found not to be a conductor of the car within the meaning of St. 1897, c. 343, providing for the licensing of conductors of street cars by the board of police commissioners of the city of Boston.

In an action against a street railway company under R. L. c. 111, § 267, for causing the death of the plaintiff's intestate by the negligence of the defendant or the unfitness or gross negligence of its agents or servants, in running a car of the defendant into a team which the plaintiff's intestate was driving from an intersecting street across the defendant's tracks, if it appears that the conductor of the car was negligent in not having obtained a license from the police commissioners of the city of Boston under St. 1897, c. 343, but that the car was so constructed that the conductor from his position at the rear could not see teams coming in front, and the only negligence that caused the accident was that of the motorman, the negligence of the conductor in failing to obtain the license is immaterial and does not affect the liability of the defendant.

The violation by a motorman of an ordinance of a city requiring every person having the control of the speed of a street railway car to keep a vigilant watch for all teams, carriages and persons, under R. L. c. 112, § 40, which imposes a penalty on a street railway company whose servants and agents wilfully or negligently violate regulations of the board of aldermen of a city as to the rate of speed allowed in its streets, does not constitute negligence on the part of a street railway corporation as distinguished from negligence of its agents and servants within the meaning of R. L. c. 111, § 267.

KNOWLTON, C. J.  This is an action, brought under the R. L. c. 111, § 267, to recover damages for the death of the plaintiff's intestate.  To recover under this section a plaintiff must show that the death was caused either by the negligence of the corporation, or the unfitness or gross negligence of its agents or servants while engaged in its business.  In this case the death was caused by a collision between a covered milk wagon, which the plaintiff's intestate was driving, and a car of the defendant in which coal was being transported.  It occurred at about half past four o'clock in the morning of May 2, 1901, at the junction of Harrison Avenue and East Newton Street in Boston.  These streets cross each other at right angles on a level, and, at the time of the accident, the horse drawing the milk wagon was going at a trot through East Newton Street across the railway tracks on Harrison Avenue, while the car was passing along the track.

The judge who tried the case without a jury found that the plaintiff's intestate was in the exercise of due care, and that the accident was caused by the negligence of the motorman, but that

his negligence was not gross.   He found that the evidence did
not warrant any inference that the motorman was unfit for his
position on the car in question.   He also found that the motor-
man saw the team shortly before it was about to enter upon the
tracks, that on seeing the team he endeavored to stop his car,
and that the accident was caused by the failure of the motorman
to keep a proper lookout, or to check his car seasonably, or by
both causes acting conjointly.   The judge ruled that there was
no negligence of the corporation within the meaning of the R. L.
c. 111, § 267.   He found for the defendant, and reported the
case for determination by this court.

Without reviewing the evidence, it is sufficient to say that all
of these findings were well warranted, and that the judge was
right in declining to find that the negligence of the motorman
was gross, within the meaning of the statute.   In the second,
fifth and sixth requests for rulings,* the judge was asked to
decide, under each, that a certain fact, if found, was *prima facie*
evidence of gross negligence.   Each of these facts, taken in con-
nection with other testimony, was some evidence of a failure to
exercise ordinary care, but no one of them was evidence of gross
negligence.

The plaintiff relies upon the fact that, at the time of the acci-
dent, the car was being used to transport coal to the defendant's
power house, and contends that a use of the street in this way
was unlawful.

It is true that the defendant is incorporated for the transporta-
tion of passengers, and that it is not authorized to engage in the

---

* The rulings requested by the plaintiff and refused by the judge were as
follows : " 1. If the defendant had no authority to operate its coal car on
Harrison Avenue, then that fact is *prima facie* evidence of negligence.   2. If
the motorman of the defendant was operating its car at the time of the acci-
dent, at a rate of speed in excess of that allowed by law, then that fact is
*prima facie* evidence of gross negligence.   3. If the conductor on the car
was not licensed by law to operate a car, then that fact is *prima facie* evi-
dence of negligence on the part of the defendant.   4. On all the evidence in
this case the plaintiff is entitled to recover.   5. If the motorman did not
see the horse of the deceased until he was about to enter on the tracks, that
fact is evidence of gross negligence on the part of the motorman.   6. If the
motorman after seeing the team of the deceased, could have stopped his
car, and he did not do so, that fact is evidence of gross negligence on his
part."

business of carrying freight for others. R. L. c. 112, § 2. If the accident had been caused by an unlawful use of its tracks and cars in carrying freight for hire, the defendant might well have been found guilty of negligence; but the construction, maintenance and management of a street railway involve the use, at different times, of many kinds of material, at different places along its lines, and a street railway corporation has the same right that any one else has to use the streets in a reasonable way, in the transportation of anything which it is reasonably necessary to transport as incidental to the proper management of its legitimate business. It must lay its rails and the timber supporting them, and if a reasonable way of bringing them near the place where they are to be laid, either for original construction or for repair of the tracks, is upon cars propelled over their tracks, it is not unlawful so to bring them. If power houses in which coal is burned for the production of electricity, to be used as power, are necessary at different points on its lines, such a corporation may maintain them, and supply them with coal by carrying it in cars along its track, if that is a reasonable way of doing the business. The provision of R. L. c. 112, § 55, goes further, and authorizes the carrying of material for the construction or repair of streets, even when it is not incidental to the maintenance or operation of the railway.

We find nothing in this case to show that the defendant was negligent in using coal cars upon its tracks. The first request for rulings was rightly refused, as not founded upon any evidence in the case.

The third request refers to the evidence that the trolley man or conductor of the car was not licensed, under the St. of 1897, c. 343, § 1. This was rightly refused. Upon the evidence the judge well might find that he was not a conductor within the meaning of that statute. He did not have control of the car as conductors do. The motorman was in charge of the car. It was his duty to stand at the rear end of the car and look out for the trolley strings, and also to turn the switches, and load and unload the coal on the car. He was sometimes called the trolley man. His duties did not correspond generally with those of a conductor.

But even if there was negligence in his failure to obtain a

license, there was no evidence that this negligence had any connection with the accident. The car was so constructed that, from his position at the rear, he could not see teams coming in front. The only negligence that caused the accident was that of the motorman. Negligence as to the license of this conductor or trolley man imposed no liability for this accident upon the defendant.

An ordinance of the city of Boston was introduced, which makes it the duty of every person having the control of the speed of a street railway car to keep a vigilant watch for all teams, carriages and persons, etc., and the plaintiff contends that negligence of the motorman, under this ordinance, and under R. L. c. 112, § 40, is negligence on the part of the corporation, within the meaning of R. L. c. 111, § 267. It is true that under § 40, just cited, the corporation is subject to a forfeiture founded on the negligence of its servants or agents. This provision rests on grounds of public policy, and it does not imply criminal conduct on the part of the corporation, or corporate negligence as distinguished from the negligence of servants or agents within the meaning of the distinction in the R. L. c. 111, § 267. The plaintiff cannot prevail on this contention.

We are of opinion that there was no error at the trial.

*Exceptions overruled.*

*J. J. Scott*, for the plaintiff.
*A. P. Stone*, for the defendant.