DAVIS v. TRACTION CO.

(Filed April 17, 1906).

*Street Railways — Collisions — Contributory Negligence—*
*Excessive Speed—Obligation of Traveler and Street Car..*

1. Where the testimony upon which defendant relied to sustain the
   defense of contributory negligence was conflicting and different
   inferences may have been drawn, the court committed no error in
   refusing to give defendant's prayer that "if the jury believed
   the entire evidence, they should answer the second issue 'yes.'"

2. If one be walking along, or crossing, a street car track, it is not
   only his duty to turn off when signalled, but to keep a lookout,
   look and listen for the approach of a car.

3. If a street car is moving at a lawful, that is, not an excessive, speed
   and a person enters upon the track, the defendant is required to
   use ordinary care, give the signals, lower the speed and if it
   appear reasonably necessary, stop the car. If the car is properly
   equipped and the equipment used with reasonable promptness
   and care, the defendant will not be liable for an injury sustained.

4. If, however, the car is moving at an excessive speed, that is, a
   speed in excess of that prescribed by the city ordinance, and by
   reason of such excessive speed, the signals cannot be given or
   the appliances used by the exercise of ordinary care, the defend-
   ant will be liable for an injury.

5. Speed in excess of that prescribed by a municipal ordinance is at
   least evidence of negligence.

6. A citizen and a street car have, in common, the right to use the
   street, but as the car must run on the track or not at all, the
   citizen must change his course and use the unoccupied portions
   of the street to prevent a collision and the managers of the car
   must move at a reasonably safe speed and equip the car with
   signals and means of controlling it and use a fender.

ACTION by J. N. Davis against Durham Traction Co.,
heard by *Judge T. J. Shaw* and a jury, at the October Term,
1905, of the Superior Court of DURHAM.

Plaintiff sues to recover damages for injuries sustained by reason of alleged negligence on part of defendant's agents in managing its electric railway cars on the public streets of the city of Durham. Defendant denies that its agents were negligent and for further defense alleges that plaintiff, by his own negligence, contributed to his injury, etc. Usual and appropriate issues were submitted to the jury. Plaintiff testified, that on the day of the accident he was driving along one of the streets of Durham in a wagon; that he met two ladies driving a horse and buggy; that he turned to the right to cross the track; not sufficient room on right side for both or, at least, the ladies did not turn out, he pulled his reins, turned across the road and looked towards town, saw no car in sight close to him and started to cross the track. That he could see only about seventy-five yards—neither saw or heard any car, he was sitting in front of the wagon. When he first saw the car it was six or eight feet away and by the time he turned his head it struck the rear end of the wagon. He thought the speed of the car was "not under" forty miles an hour. Before crossing the track, he looked back seventy or seventy-five yards and could not see any car. There was evidence on behalf of defendant tending to show that the car was not running faster than fourteen miles an hour, the ordinance rate of speed. There was also evidence tending to corroborate the plaintiff's statement that the car was running at an excessive rate of speed. James Parrish, for plaintiff, testified that he saw accident. Saw two ladies in a buggy; two or three vehicles in the street—saw plaintiff had time to cross the track—car was about twenty or twenty-five yards from him. When he turned to cross the track the car was running from 20 to 25 miles an hour; it did not slacken its speed.

Mr. Seeman, for defendant, testified that when plaintiff was about 25 or 30 feet ahead of car, he deliberately turned across the track. Saw him as he drew his lines. He did not

observe the car coming. Near center of track plaintiff looked and saw the car and about that time it struck him. Witness was on car. Motorman cut off the power and put on brakes. Does not know whether signal was given. It was not a street crossing. The motorman testified that he saw plaintiff driving along the car track. When first saw him he was 30 or 40 steps off. When within 10 or 12 steps from him, plaintiff turned horse's head across the track. Plaintiff was so near the car that he did not have time to stop it—was drifting down grade. Put on brakes and sounded gong 20 steps from him. Had not started across the track then. Brakes were in good condition. Can hear the gong seventy five steps. Running between 10 and 15 miles an hour. The conductor testified that he was at front of car when it struck the wagon. Plaintiff was travelling beside the track—plenty of room for car to pass without touching his wagon. Car ran three lengths before it stopped—was running about ten miles an hour; plaintiff going from four to six miles an hour.

There was other testimony tending to sustain both plaintiff and defendant's witnesses. Defendant requested His Honor to charge the jury that if they believed the entire evidence they should answer the second issue "yes," and to His Honor's refusal, duly excepted. Defendant submitted a series of instructions which His Honor declined and in lieu thereof, after fully stating the contentions of the parties, instructed the jury: (1) The travelling public has the right to the reasonable use of the streets of the city of Durham, and the street cars operated on said streets not to be run at a rate of speed that will endanger those making such use of the streets. (2) The citizen has the same privilege to use the street for travelling that the street railway company has for running its cars on the streets. The franchise to operate its cars on the public streets of the city of Durham does not give the defendant the right to the exclusive use of the street or any part thereof, and does not excuse it from the

obligation to exercise due and proper care to avoid injuring persons who have a right to use the streets. (3) It would not, as a matter of law, be negligence on the part of the plaintiff to attempt to drive across the track of the defendant if he looked back immediately before driving across the track and saw no car within 75 yards. (4) It is not negligence *per se* for a citizen to be anywhere upon such tracks (railway or streets) so long as the right of a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car. Defendant duly excepted. His Honor further charged the jury that if they found that the car was running at a higher rate of speed than that prescribed by the ordinance of the city they should consider such fact as evidence upon the first issue. That if the defendant was operating its car at the time of the accident at a rate of speed not in excess of that prescribed and if the motorman, upon discovering plaintiff crossing the track, applied brakes to his car, which were in good condition, and was unable to stop it, they should answer the first issue "no." That if the plaintiff undertook to cross the track when the car was so close to him that it could not be stopped in time to avoid the accident, if not running more than the rate prescribed, the jury will answer the first issue "no." That if they found that the motorman sounded the gong or that the car made sufficient noise to be heard by the plaintiff before attempting to cross the track when so close that a collision could not be avoided by the exercise of reasonable care on the part of the defendant, they will answer the second issue "yes." That while a person in a vehicle has the same right to the reasonable use of the street that the car has, still the car is compelled to move on its track and for this reason it is the duty of the plaintiff to get out of the way of the car and to keep a reason-

able lookout when going upon the track, and if he fails to do so and is injured in consequence by such car at a time and under circumstances when, by the exercise of ordinary care on the part of the agents or servants, they could not avoid the injury, he would be guilty of contributory negligence."

The jury found the issues in favor of the plaintiff, assessing his damages at $750. Defendant moved for new trial. Motion denied. Defendant excepted. Judgment and appeal.

*Winston & Bryant* for the plaintiff.
*Manning & Foushee* for the defendant.

CONNOR, J., after stating the case: His Honor could not, upon the entire evidence, have properly given the first instruction asked. The testimony upon which defendant relied to sustain the defense of contributory negligence was conflicting and certainly, upon any hypothesis, different inferences may have been drawn. The instruction prayed, which was substantially a demurrer to the entire evidence, presupposes that in the view most favorable to the plaintiff, contributory negligence was established as a conclusion of law. The exception to the refusal to so instruct the jury was not pressed in this court.

The second exception is pointed to His Honor's refusal to give the sixth instruction prayed. "It is the duty of a driver of a private vehicle while on the track, not only to turn off when called upon by a servant of the company, but to listen to whatever signal there may be of an approaching car; and he should also look behind from time to time so that he may, if a car be near, turn off and allow it to pass without hinderance or any slackening of ordinary speed, and if he fails to observe this precaution, he does so at his own risk." There is no valid objection to the legal proposition involved in the instruction, but we think that, in so far as there was evidence bearing upon it, His Honor so instructed the jury. The

plaintiff was not injured by failing to "turn off" the track after he saw or could, by the exercise of ordinary care, have seen the approaching car, but by attempting to cross the track. There is no suggestion that he lingered upon the track. The defendant's witness says that he was trying to cross the track at the rate of four to six miles an hour. It must be conceded that if one be walking along, or crossing, a track it is not only his duty to turn off when signalled, but to keep a lookout, look and listen for the approach of a car. The track itself is notice that a car may at any moment approach. We are speaking only of street railways in this connection. The plaintiff says that before trying to cross, he did look and could see seventy-five yards; that he saw no car and heard no signal until the car was within six or eight feet of him. That he did not have time then to get off the track. There was evidence that one witness on the car saw plaintiff enter upon the track when the car was not more than twenty-five or thirty yards away from him; he is corroborated in that respect. His Honor correctly submitted the question to the jury. There is no positive evidence that he did in fact see the car or hear the signal, there was evidence from which the jury may have so found, but it was their province to pass upon the question. The theory of the plaintiff is that he did not see the car or hear the signal until at the high speed which he fixes, it was impossible to get off, or for the car to be stopped. The defendant, denying the excessive speed, insists that he either did see, or, by the exercise of ordinary care, could have seen the car approaching, and that in either view he was guilty of negligence in going upon the track which contributed to his injury. The third exception is directed to the measure of defendant's duty upon the theory that plaintiff "suddenly and unexpectedly drove his wagon across the track," in which view of the case it is insisted that defendant was only required to use ordinary care to avoid injuring him. The instruction is correct and should have

been given but for the omission of the element of excessive speed which runs through the entire case. It is undoubtedly true that if a car is moving at a lawful, that is, not an excessive, speed and a person enters upon the track, the defendant is required to use ordinary care, give the signals, lower the speed and if it appears reasonably necessary, stop the car. If the car is properly equipped and the equipment used with reasonable promptness and care, the defendant will not be liable for an injury sustained. If, however, the car is moving at an excessive speed, that is, a speed in excess of that prescribed by the city ordinance, and by reason of such excessive speed the signals cannot be given or the appliances used by the exercise of ordinary care, the defendant will be liable for an injury and this for the reason that it has, by the excessive speed, brought about a condition which it cannot control. It was therefore proper for His Honor to modify the instruction by inserting the words "and the car was not running faster than fourteen miles an hour." This gave the defendant the benefit of the principle invoked, unless the jury found that the speed was excessive. This court has held in accordance with many others that speed in excess of that prescribed by the ordinance is at least evidence of negligence and His Honor so instructed the jury. *Edwards v. Railroad Co.,* 129 N. C., 78. It may be that, under unusual conditions, such as a crowded street or passing a funeral or other procession or other conditions liable to occur in a city, the ordinance speed would be excessive. Certainly, beyond that prescribed, it is always evidence of negligence and under other than usual conditions, the standard of duty in regard to speed would be that of the ideal prudent man.

The fourth exception is directed to the instruction given: "It is not negligence *per se* for a citizen to be on the track so long as the right of a common user of tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries

to persons who, without negligence on their part, may not at the moment be able to get out of the way of a passing car." If this instruction was not materially modified, we do not think that it could be sustained. Assuming, that with certain modifications, which were explained to the jury, plaintiff and defendant had, in common, the right to use the street, it cannot be that while both are in the enjoyment of such right, the duty is imposed upon either "to exercise such watchful care as will prevent accidents or injuries," etc. No one is legally liable for an accident or, what is equal thereto, an accidental injury. If the injury is the result of negligence, it is not an accident. It often happens that while two or more persons are in the exercise of common rights or the discharge of lawfully imposed duties, an injury is sustained which cannot be traced to an omission or breach of any duty or avoided by the exercise of the degree of care required; such injuries are said to be accidental. The law has no means of tracing them to any breach of duty and therefore holds no one liable. The usual rule applied to the relative rights and duties of persons enjoying a common right, is ordinary care, as railway companies and persons using a public crossing. Each must exercise that degree of care which is used by prudent men, under similar circumstances. That being the standard, the question, except in certain well defined cases, is for the jury to find the facts and apply it. When it is said that the citizen and the street car have a common right to use the highway, regard is had to the elementary law that two objects cannot at the same time occupy the same space. It is, therefore, necessary to formulate such rules based upon common sense and experience as will enable them both to enjoy their common right without undue interference with each other. The car must run on the track or not at all, the citizen on foot or in a vehicle may change his course easily and promptly, using unoccupied portions of the street—hence, as His Honor correctly said to

DAVIS *v.* TRACTION CO.

the jury, he must give way to the car to prevent a collision. This being so, the duty is imposed upon the managers of the car to move at a reasonably safe speed, the maximum of which in Durham is by ordinance fixed at fourteen miles an hour; to equip the car with signals and means of controlling it—bringing it to a stop when necessary and, as prescribed by statute in this State, to use a fender. In view of these principles His Honor said to the jury that if they found that plaintiff suddenly drove across the track in front of the car and that thereupon the employees of defendant when they saw his danger did all that they reasonably could do to stop the car and avoid the injury, the defendant would not be guilty of negligence and they would answer the first issue "no." He gave the defendant the benefit of the same principle in his instruction upon the second issue in regard to contributory negligence. "If the jury shall find from the evidence that the defendant's motorman sounded the gong or that the defendant's car approaching the plaintiff made sufficient noise to be heard by the plaintiff before he attempted to cross the track, and notwithstanding either the sounding of the gong or the noise of the car, the plaintiff undertook to cross said railway track when the car was very close to him and so close that a collision with the plaintiff's wagon could not, by the exercise of reasonable care, be avoided by defendant, then the jury will answer the second issue "yes." This was equivalent to saying to the jury that if they found defendant's evidence to be true, they should find the issue accordingly. The general principles applicable to such cases were well considered in an opinion by *Mr. Justice Douglas,* in *Moore v. Street Ry. Co.,* 128 N. C., 455. His Honor's instructions are sustained by the law as announced in that case. The testimony was conflicting and the jury adopted plaintiff's version of the transaction. We find no reversible error in the record. It is so adjudged.

No Error.