## BAIN *v.* FORT SMITH LIGHT & TRACTION COMPANY.

### Opinion delivered January 4, 1915.

1. MUNICIPAL CORPORATIONS—CREATION OF RIGHTS BETWEEN THIRD PARTIES.—It is not within any of the general or special powers conferred upon municipal corporations in this State to create a right of action between third persons nor to enlarge the common law or statutory liability of citizens among themselves.

2. MUNICIPAL CORPORATIONS—POWERS—ORDINANCES.—A municipal corporation has no powers except those expressly conferred and those fairly implied for the attainment of declared purposes.

3. MUNICIPAL CORPORATIONS—PUBLIC SERVICE CORPORATIONS—GRANT OF FRANCHISE—CONDITIONS AND REQUIREMENTS.—In the grant of a franchise to a street railway company, a municipal corporation has the power to reserve the right to pass ordinances for the protection of the person and property of individuals, and creating a liability against the company in their favor for a violation of such ordinance, but when no such reservation was made in the grant of the franchise, the violation of an ordinance subsequently passed, could not become the basis of a liability for personal injuries.

4. MUNCIPAL CORPORATIONS—PUBLIC SERVICE CORPORATIONS—ORDINANCES—RIGHTS OF THIRD PARTIES.—There being no statute in this State creating a liability against street railway companies in favor of parties injured by an act constituting a breach of a city ordinance passed for the protection of persons or property, and there being no statute conferring upon municipal corporations the power to pass such an ordinance, no power exists in a city to create a liability in favor of an individual against a street car company for the violation of an ordinance creating such a liability.

5. MUNCIPAL CORPORATIONS—POLICE POWER—STREET RAILWAYS—REGULATION.—A city, under its general police power over the streets, may pass any reasonable and proper regulation prescribing the manner in which the franchise of street railways shall be enjoyed, not inconsistent or in conflict with their charter rights.

6. MUNICIPAL CORPORATIONS—USE OF STREETS—REGULATION—PUBLIC SERVICE CORPORATIONS.—A city ordinance giving United States mail wagons, when in use collecting mail. the right-of-way over the city streets, *held*, to be merely a police regulation designed primarily for the benefit of the general public to insure free course to the United States mails, and the ordinance does not undertake to create a liability in favor of a United States mail collector against a

street railway company for a violation of the terms of the ordinance.

7. STREET RAILWAYS—NEGLIGENCE—VIOLATION OF CITY ORDINANCE—EVIDENCE.—In a common-law action against a street railway company for an injury alleged to have been caused by the company's negligence, if, at the time of the injury, the street car producing it was being operated in a manner that violated an ordinance of the city, such fact may be shown as tending to establish the allegations of negligence.

8. STREET RAILWAYS—INJURY TO PERSON ON TRACK—CITY ORDINANCE—RIGHT-OF-WAY.—A city ordinance undertook to give United States mail collectors while in the exercise of their duties, the right-of-way over the city streets. Plaintiff, a mail collector, was injured by being struck by a street car. In an action for damages against the street railway company, *held*, the city ordinance did not create any liability against the street railway company, and should only be considered by the jury in passing upon the question of whether there was negligence upon the part of either the plaintiff or defendant.

9. STREET RAILWAYS—PERSONAL INJURIES—DUTY OF CARE.—An instruction in an action against a street railway company for damages for personal injuries, which requires the jury to find that the motorman used ordinary care in the management of his car at and near the place of the injury, held correct, since ordinary care in the management of a street railway car requires a constant lookout to be kept for persons upon the track.

10. INSTRUCTIONS—CONFLICT.—Instructions should not be considered as in conflict where they can be harmonized.

11. STREET RAILWAYS—INJURY TO PERSONS ON TRACK—DUTY TO LOOK AND LISTEN.—Where plaintiff was injured by being struck by a street car, while he was attempting to cross the track; *held*, an instruction that it was plaintiff's duty before going on or attempting to cross the track of defendant company, to look and listen for approaching cars, was proper, when, under the proof in the case, no circumstance developed to prevent him from looking for the car or to excuse him for not doing so.

12. STREET RAILWAYS—PERSONAL INJURIES—DUTY OF CARE—CONTRIBUTORY NEGLIGENCE.—In an action against a street railway company for damages for personal injuries received in a collision, if the plaintiff was guilty of contributory negligence, then the motorman was only required to use ordinary care and prudence, after discovering plaintiff's peril, to avoid injuring him.

13. STREET RAILWAYS—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.—In an action against a street railway company for damages caused by plaintiff being struck by a moving car, when the evidence proves or tends to prove that the plaintiff was guilty of con-

tributory negligence, the street railway company is liable only when its servants in charge of the car fail to exercise ordinary care to prevent the injury after the plaintiff's perilous position has been discovered.

14. LOOKOUT STATUTE—APPLICATION TO STREET RAILWAYS.—The lookout statute of May 26, 1911, Act 284, p. 275, Acts 1911, amending Kirby's Digest, § 6607, has no application to street railways.

15. EVIDENCE—BURDEN OF PROOF.—The plaintiff must establish the material allegations of his complaint by a preponderance of the evidence.

16. STREET RAILWAYS—PERSONAL INJURIES—NEGLIGENCE—BURDEN OF PROOF.—In an action against a street railway company for damages for personal injuries caused by negligence, where plaintiff alleged that the motorman of defendant's car was negligent in stopping his car, and defendant denied the allegation, it is competent for the plaintiff to prove and the burden was upon him to show that the motorman did not make a good stop.

17. EVIDENCE—BURDEN OF PROOF—DUTY TO INTRODUCE TESTIMONY.—Where the burden of proving any matter is thrown upon a party by the pleadings he must generally introduce in the first instance, all the evidence upon which he relies; and he can not, after going into part of his case, reserve the residue of his evidence for a subsequent opportunity.

18. EVIDENCE — REBUTTAL TESTIMONY — INTRODUCED WHEN. — Rebuttal testimony should rebut the testimony advanced by the other side, and should consist of nothing which might properly have been advanced as proof in chief, and where testimony is not properly rebuttal testimony but should have been introduced as testimony in chief, in the absence of a proper showing, the trial court may in its discretion refuse to admit the same as rebuttal testimony.

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellant was a United States mail collector; and under an ordinance of the city of Fort Smith, in case of conflict, had the preferential right-of-way over the appellee in the use of the streets. While in the discharge of his duties, he drove his cart to the mail box at Manhattan Cafe on Garrison Avenue, stopped the cart about four feet from the box, which was at the curb, gathered the mail from the box, and as he locked the box his horse started across the street, as he was in the habit of doing,

to the mail box on the opposite side. Appellant jumped into the cart when same was ten or twelve feet from the curb, and about the middle of the street between the curb and the first car track. At this time the street car was at or crossing Fifth Street, about seventy-five feet away. Appellant did not know the speed the car was going. It increased its speed after crossing Fifth Street, but appellant thought the motorman would check the speed and control the car so as not to run over him. This the motorman could have done had he applied the brakes in time, but the motorman did not check up the speed of the car until he was within ten or twelve feet of appellant's cart, when he made a hurried effort to do so. Appellant's wagon nearly cleared the track, but the hind wheel was struck by the car, causing appellant's horse and cart to be dragged against the first trolley post east of the point of contact, which was more than fifty feet from where appellee's car struck the cart of appellant. Appellant was thrown against an iron rod around the top of the cart, and in this way he alleges that he received the injuries of which he complained. The distance from the west side of Fifth Street, where the car first stopped or slowed up, was ninety-three feet from a point opposite the Manhattan box, the cart being struck a few feet west of that point.

The appellant's official and usual route in collecting the mail was to go from the Manhattan box to the box on the corner of Fifth and Garrison Avenue on the opposite side. That this was appellant's usual and official route was known to the motorman. From the curb to the first rail of the track was a little over thirty-five feet. The track was about five feet wide, and the horse and cart were about fifteen feet long. There was nothing to obstruct the view of the motorman, and he could have seen the appellant collecting mail at the Manhattan box and could have seen appellant's cart in starting from the Manhattan box to the box on the opposite side of the street.

The appellant sued the appellee for damages, alleging that its motorman was running the car at a danger-

ous and high rate of speed; that the motorman did not sound any bell or alarm; that he could have seen appellant by exercising ordinary care; that he ran upon appellant without warning, and by reason of these acts of negligence appellant was run down and seriously injured.

The appellee denied the allegations of negligence, and set up that the appellant was driving his cart in violation of the city ordinances, and that the collision was caused solely through the negligence of the appellant.

The testimony on behalf of appellant tended to establish the facts as above stated. The testimony on behalf of the appellee tended to show that appellant caught up with and jumped into his mail cart when same was on appellee's car track directly in front of the street car; that the motorman, when the horse's neck was about across the first rail of the car track, applied the brakes and reversed the current to stop the car, at which time the same was thirty or thirty-five feet away, going at a speed of four or five miles an hour, the current having been shut off, and the car was being carried by its own momentum; that the car stopped within two feet of where it hit appellant's cart; that the motorman attempted to stop the car as soon as he discovered appellant's dangerous position, but was unable to stop it in time to prevent the collision. The car was a light single truck car, with one passenger. The motorman applied the brakes as soon as the neck of the horse crossed the first rail, sounded the bell and made a good stop. Appellant was not thrown out of the cart, which was pushed up to within two feet of the trolley post, but stepped out of the same and gathered up his mail, complained only of having his hand slightly hurt, went away, and afterward during the day was seen gathering up the mail on his route.

The testimony on behalf of the appellant tended to show that the injuries of which he complained at the time of the trial were produced by the collision, while the testimony on behalf of the appellee tended to show that the injuries and suffering of which he complained at the time of the trial were from other causes, and that appellant,

·by reason of the collision, only received a slight injury to his hand.

The above were the issues and substantially the facts adduced in evidence on behalf of the respective parties, and upon which the case was sent to the jury, whose verdict was in favor of the appellee, and from the judgment rendered in appellee's favor this appeal has been duly prosecuted.

Appellant complains of the rulings of the court in granting and refusing prayers for instructions and upon the admission and rejection of testimony. We will discuss the grounds urged for reversal in the opinion.

*Ira D. Oglesby,* for appellant.

1. The court, by refusing to give instruction 4 and modifying instruction 5, requested by appellant, gave no correct guide as to the rights of appellant under the ordinance, and tended to discredit the theory that appellant had any right-of-way superior to that of appellee. 84 N. Y. S. 514.

2. Instruction 5, given at appellee's request, was clearly erroneous, and was equivalent to a peremptory instruction. It limited the duty of the motorman to an effort to stop the car "as soon as he saw plaintiff in a position of danger." This is not the law. It was his duty to keep a reasonable lookout along the streets to observe persons attempting to cross where they had the right to do so, and if by his negligence in failing to do this a collision occurs, defendant is liable. 42 Ark. 321; Nellis on Street Railways, § 381; Sherman & Redfield on Negligence, § 485-c; Booth on Street Railways, § 306; 81 Mo. 466; 24 S. E. 953; 50 So. 632.

This instruction is in direct conflict with instruction 13, so that the jury were left without a correct guide as to the duty of the motorman.

Instruction 6 was erroneous in two particulars; first, in declaring that if appellant did not look and listen for the approaching car before attempting to cross, the jury should find for the defendant. It should have been left to the jury to say whether such failure, if shown, was,

under the circumstances, negligence.  108 Ark. 95.  Second, in directing a finding for the defendant, if the jury "believed that plaintiff saw or could have seen the approaching car and drove or permitted his horse to go upon the track in front of said car."  70 N. W. 408; 66 App. Div. (N. Y.) 554; 40 *Id.* 307; 1 St. Ry. Rep. 434; 43 S. E. 618; 46 Atl. 779; 108 N. Y. 354; 7 App. Div. (N. Y.) 253; 36 Pac. 673; Sherman & Redfield, Neg., § 485-c; Nellis on Street Railways, 343.

Instruction 11, upon the burden of proof, errs in telling the jury that if the testimony is equally balanced as to whether plaintiff's condition was due to the accident, he can not recover, without defining what is meant by "equally balanced."

3.  The court erred in refusing to permit appellant to prove the distance in which a car going at the speed fixed by appellee's witnesses could be stopped.  The testimony of the witnesses offered by appellant for this purpose was certainly admissible to disprove that the car was going only four or five miles an hour; the statement of appellee's witnesses that if going at such speed it could not be stopped in less than thirty feet, and also the statement that a quick or good stop was made.  Jones on Evidence, § 809; Wigmore on Evidence, 2477; 99 Ind. 569; 4 So. 524; 17 So. 505; 67 S. W. 237; 20 N. E. 819; 55 Ark. 164.

*Jos. M. Hill* and *Henry L. Fitzhugh,* for appellee.

1.  Appellant, in requesting the giving of instructions 4 and 5, assumed that the city ordinance could create a cause of action.  This is not the law.  While the ordinance was not admissible in evidence, as we think, yet the court permitted its introduction, and then in instructions given explained to the jury the legal effect thereof. A city ordinance can not alter the common law rights of parties.  This ordinance created no liability upon the part of the company, nor did it give the plaintiff a cause of action.  1 Nellis on Street Railways, 493; 23 Am. Rep.

507; 28 So. 87; 43 S. W. 432; 57 S. W. 707; 36 Cyc. 1561; 6 Thompson, Com. on Negligence, 1374.

2. There is no merit in appellant's objection to instruction 5 given at appellee's request. The use of ordinary care in the management of the car necessarily included the keeping of a proper lookout. The instruction was complete and unobjectionable as it stood, but when read in connection with instruction numbered 13, given at appellant's request, the jury could not have been misled. Moreover, if instruction 5 was defective in verbiage, it was appellant's duty to make specific objection at the time and point out to the court its defects. 93 Ark. 589; 104 Ark. 409; 87 Ark. 396.

3. Instruction 6 is correct. When an approaching car is in plain view, it is negligence *per se* to drive immediately in front of such car without looking or listening, and under such circumstances it becomes a question of law. 108 Ark. 95, and authorities cited. The effect of the latter part of the instruction was to charge the jury that if the plaintiff was guilty of contributory negligence, then the motorman was only required to exercise ordinary care after discovering his peril—and that is the law. 77 Ark. 401; 62 Ark. 164; 81 Ark. 368.

4. There was no error in excluding the testimony offered by appellant in rebuttal. The burden of proving that the motorman did not make a good stop or a stop which would have prevented the accident, was upon the plaintiff. The latter part of section 809, Jones on Evidence, cited by appellant, fits this case exactly, viz: * * * "and when the burden of proving any matter is thrown upon a party by the pleadings, he must generally *introduce, in the first instance, all the evidence upon which he relies;* and he can not, after going into part of his case, reserve the residue of his evidence for a subsequent opportunity." See also Wigmore on Evidence, 2437; 2 Elliott on Evidence, § § 947, 948; Underhill on Evidence, § 551.

5. Regardless of the question of preferential rights, the plaintiff's own testimony shows that he was guilty of

contributory negligence, and the court ought to have directed a verdict for defendant. 80 Ark. 159; 108 Ark. 95.

WOOD, J., (after stating the facts). I. The appellant asked the court to tell the jury in his prayer No. 4, that the city ordinance gave United States mail wagons when in use collecting mail the right-of-way, and that the appellant, as the driver of such wagon, had the right to assume that appellee's motorman, if he discovered, or by the exercise of ordinary care would have discovered, the approach of the mail wagon, to accord it and the driver the right-of-way. The court refused this prayer, but instructed the jury as follows:

"The motorman and the driver of the mail wagon are presumed to have been familiar with the ordinance giving the United States mail wagons the right-of-way and their conduct must be judged in the light of this provision."

And, further, at appellant's request, prayer No. 10: "The jury, in determining whether defendant was guilty of negligence and whether plaintiff was guilty of contributory negligence may take into consideration the ordinance introduced in evidence so far as same affects the rights of plaintiff and defendant."

The court further instructed the jury on its own motion No. A as follows: "The ordinance of the city of Fort Smith introduced in evidence does not create any liability against the defendant, and is only to be considered by the jury in passing upon the question as to whether there was negligence upon the part of either the plaintiff or defendant."

(1-2)    Did the court err?   It is not within any of the general or special powers conferred upon municipal corporations in this State to create a right of action between third persons, nor to enlarge the common law or statutory liability of citizens among themselves. This could only be done by contract between the municipality and the company sought to be charged with the violation of an ordinance alleged to be for the benefit of a citizen.

Kirby's Digest, chap. 115; *Holwerson* v. *St. Louis & Sub. Ry. Co.*, 157 Mo. 216. Such power is not implied from any of the powers expressly conferred. A municipal corporation has no powers except those expressly conferred and those fairly implied for the attainment of declared purposes. *Morrilton Waterworks Imp. Dist.* v. *Earl*, 71 Ark. 4. See also *City of Winchester* v. *Redmond*, 93 Va. 711.

(3) The city had the express power to authorize the construction of street railways (Kirby's Digest, § 5443), and in the ordinance granting the charter to the appellee the city could undoubtedly have reserved to itself the right as a condition or consideration for the granting of the franchise the power to pass ordinances for the protection of persons and property of individuals and creating a liability in their favor against the company for a violation of such ordinances, and the company, if it accepted the franchise with these provisions, would be bound thereby and liable in damages to individuals for a violation of such ordinances. It is not shown that the city of Fort Smith reserved to itself such power as a consideration for the grant of its franchise to the appellee, or that the company accepted the franchise with such power reserved as a consideration therefor. The violation of the ordinance, therefore, could not become the basis of a liability for personal injuries. See *Byington* v. *St. Louis Rd. Co.*, 147 Mo. 673, 49 S. W. Rep. 876.

(4) We have no statute creating a liability against street railway companies in favor of parties injured for breaches of ordinances passed for the protection of persons or property, and there is no statute conferring upon municipal corporations the power to pass such ordinances, as was the case in *Hayes* v. *Mich. Cent. Rd. Co.*, 111 U. S. 228. Therefore, no power existed in the city to create a liability in favor of appellant against appellee for a violation of the ordinance under review, and if the ordinance had created such liability it would have been void for lack of power to enact it.

(5)   A city, under its general police power over the streets, could pass any reasonable and proper regulations prescribing the manner in which the franchise of street railways should be enjoyed, not inconsistent or in conflict with their charter rights.   36 Cyc. 1447, and note.

(6)   As we construe the ordinance, it does not undertake to create a liability in favor of United States mail collectors against the appellee for a violation of its terms.   It is only a police regulation to be enforced solely by fine, and was designed primarily for the benefit of the general public to insure the United States mail free course.   True, it operates incidentally to protect the mail carts and the person of mail collectors while engaged in their duties, but it was not enacted for their special personal benefit in the sense of creating a right of action in their favor against the street railway company for a violation of the ordinance.

What effect, then, should be given the ordinance in this case?

In common law actions for negligent injuries, where at the time of the injury a city ordinance is being violated, in some jurisdictions it is held that violations of the city ordinance is not evidence of negligence, and that the ordinance is not admissible in evidence.   See *Rockford City Railway Co.* v. *Blake,* 173 Ill. 354, 50 N. E. Rep. 1070, 64 Am. St. Rep. 122.   See, also, *Ford's Admr.* v. *Paducah City Ry. Co.,* 99 S. W. Rep. 355.

In other jurisdictions it is held that the operation of cars in violation of a city ordinance is negligence *per se.* *Ashley* v. *Kanawha Valley Traction Co.,* 60 W. Va. 306; *Moore* v. *St. Louis Transit Co.,* 194 Mo. 1, 92 S. W. 390; *Memphis St. Ry. Co.* v. *Haynes,* 112 Tenn. 712, 81 S. W. 374; *Dallas Consolidated Elec. St. Ry.* v. *Ison,* 83 S. W. 408.

(7)   But in other jurisdictions it is held that in a common law action against street railway companies for injury alleged to have been caused by the company's negligence if at the time of the injury the street car producing it is being operated in a manner that violated an ordi-

nance of the city, such fact may be shown as tending to establish the allegations of negligence.

The rule as last stated is supported by the weight of authority and the better reason. Without stating the rule or citing any authority to support it, we recognized and approved it in the recent case of *Little Rock Railway & Electric Co.* v. *Sledge,* 108 Ark. 95-110. Other authorities are as follows: *Davies* v. *Durham Trac. Co.,* 141 N. C. 134, 53 S. E. 617; *Henderson* v. *Durham Traction Co.,* 132 N. C. 779, 44 S. E. Rep. 598; *Meek* v. *Pennsylvania Co.,* 38 Ohio St. Rep. 632. See, also, *Cumming* v. *Brookland City Rd. Co.,* 104 N. Y. 669, 674, 10 N. E. Rep. 855; *Connor* v. *Electric Trac. Co.,* 173 Pa. St. 602, 34 Atl. 238; *Baltimore City Pass. R. Co.* v. *McDonnell,* 43 Md. 534; *Harrison* v. *Sutter St. R. Co.,* 116 Cal. 165, 47 Pac. Rep. 1019; *Mahan* v. *Union Depot, etc., Co.,* 34 Minn. 29, 24 N. W. Rep. 293; *Hanlon* v. *South Boston Horse R. Co.,* 129 Mass. 310. See, also, *Caswell* v. *Boston Elevated Ry.,* 190 Mass. 527, 77 N. E. Rep. 380; *Glassey* v. *Worcester Consol. St. R. Co.,* 185 Mass. 315, 70 N. E. 199; *Stevens* v. *Boston El. R. Co.,* 184 Mass. 476, 69 N. E. Rep. 338; *Norfolk R., etc., Co.* v. *Corletto,* 100 Va. 355, 41 S. E. Rep. 740, and note to *Ashley* v. *Kanawha Valley Trac Co.,* 9 Am. & Eng. Ann. Cas. 840-2, where the above cases are collated.

In a case where, at the time of the injury, a railroad train was being run at a greater rate of speed than that prescribed by a city ordinance, Mr. Justice Lamar, speaking for the Supreme Court of the United States, in *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408-418, said: "But perhaps the better and more generally accepted rule is that such an act on the part of the railway company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence," citing cases.

Now, the court, in permitting the ordinance to be introduced and in its instructions based thereon, con-

formed its rulings to the law as above announced and approved.

The prayer for instruction No. 4 was argumentative and calculated to mislead the jury.

(8)   In modifying, and giving as modified, appellant's prayer No. 5, and in giving appellant's prayer No. 10 as requested, and in giving instruction No. "A" on its own motion, the court declared the law strictly in accord with the rule as above approved, and its rulings gave to the appellant the utmost to which he was entitled.

II.  Instruction No. 5, given at the instance of appellee, was as follows:

"The court instructs you that if you believe from the evidence that defendant's motorman in charge of its car used ordinary care in the management of said car at and near the place where plaintiff was injured, and that as soon as he saw plaintiff in a position of danger, said motorman used such care and caution in stopping said car as to avoid injury to plaintiff as a person of ordinary care and prudence would have exercised under such circumstances, then your verdict must be for the defendant."

(9)   Appellant contends that this instruction was erroneous because it only required the motorman to use ordinary care after he saw plaintiff in a place of danger. The instruction, taken as a whole, is not open to this objection.   The instruction required the jury to find that the motorman used ordinary care in the management of his car at and near the place of the injury.   Ordinary care in the management of a street railway car requires a constant lookout to be kept for persons upon the track. This is a well recognized duty of motormen under the law pertaining to the management of street railways and the instruction as offered, and the language used in the instruction, when fairly construed, must have conveyed the idea to the jury that such was the duty of the motorman.   But if there were any doubt about it, the jury could not have been misled, for in prayer No. 13, given at appellant's request, the court told the jury that it was the

duty of the motorman to keep a reasonable lookout and to exercise reasonable care to discover the approach of vehicles toward the car track at such places as said vehicles had the right to cross, and to take reasonable and timely precaution to prevent striking or colliding with same. These instructions, when considered together, as they should be, could not possibly have misled the jury.

(10) Instructions should not be considered as in conflict where they can be harmonized, and instruction No. 13, given at the instance of the appellant, should be taken as not in conflict, but as supplementary to and explanatory of what is meant in instruction No. 5, by the use of the words "ordinary care in the management of his car," etc. But if the words "ordinary care in the management of his car" did not include the duty upon the part of the motorman to keep a lookout for persons and property on the track, then it was a defect in the verbiage, which should have been reached by a specific objection. See *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255; *Pettus* v. *Kerr,* 87 Ark. 396; *St. Louis, I. M. & S. Ry. Co.* v. *Carter,* 93 Ark. 589; *Missouri & N. A. Rd. Co.* v. *Duncan,* 104 Ark. 409.

Instruction No. 6, given at the instance of appellee, of which appellant complains, is as follows:

"The court instructs you that it was the duty of plaintiff before going on or attempting to cross the tracks of defendant company to look and listen for approaching cars, and if you believe from the evidence that plaintiff failed to do so, or if you believe that plaintiff saw or could have seen the approaching car, and drove or permitted his horse to go upon the track in front of said car, then you should find for the defendant, unless you further find from the evidence that defendant's motorman, after he saw plaintiff in a perilous position, failed to use such care and caution in stopping said car as a person of ordinary care and prudence would have exercised under like circumstances."

The appellant contends that the instruction was erroneous in telling the jury that it was the duty of plaintiff,

before going on or attempting to cross the track of defendant to look and listen for approaching cars, and further erroneous in telling the jury that if plaintiff saw or could have seen the approaching car and drove or permitted his horse to go upon the track in front of said car, etc.

(11-12)   The undisputed facts show that the appellant's view of appellee's approaching car was unobstructed.   There were no circumstances developed by the proof to prevent him from looking for the car or to excuse him for not doing so.   The instruction, when viewed in the light of the uncontroverted facts, therefore, was in conformity with the law as announced by this court in *Little Rock Ry. & Elec. Co.* v. *Sledge, supra.*   Moreover, the instruction could not have been prejudicial in the particulars urged by the appellant, because the appellant himself testified that he was looking at the car; that he could see the motorman, and that the motorman could see him; that he was looking at the motorman for some distance before the wagon was struck and continued to look at the car before it struck his wagon.   That part of the instruction which told the jury that if plaintiff saw the approaching car and drove in front of it, then the motorman was only required to use such care to prevent the injury as a person of ordinary prudence would have exercised under like circumstances, in effect told the jury that if appellant was guilty of contributory negligence, then the motorman was only required to use ordinary care and prudence, after discovering his peril, to avoid injuring him.   This is a correct statement of the law applicable to the facts.

Instruction No. 8 was as follows:   "It was the duty of plaintiff to keep a lookout for cars before going upon defendant's track immediately in front of its moving car, and if you believe from the evidence that plaintiff failed to keep such lookout for defendant's car and went upon defendant's track in front of an approaching car, then the court instructs you that the defendant would not be liable in this action, although you might believe that its motorman carelessly failed to discover plaintiff's peril

in time to have avoided a collision.  If plaintiff was guilty of negligence in going upon defendant's track, then defendant's servant was only required to exercise ordinary care for plaintiff's safety after actually discovering him in a place of danger.''

(13)  The above instruction, like instruction No. 6, preceding it, correctly declared the law relating to the liability of street railway companies, in cases where the evidence proves or tends to prove that the plaintiff is guilty of contributory negligence.  In all such cases street railway companies are liable only where their servants in charge of the car fail to exercise ordinary care to prevent injury after the plaintiff's perilous position has been discovered.  *Johnson* v. *Stewart*, 62 Ark. 164; *Hot Springs St. Ry. Co.* v. *Johnson*, 64 Ark. 421.  See, also, *Hot Springs St. Rd. Co.* v. *Hildreth*, 72 Ark. 572. The court did not, in instruction 8, tell the jury that appellant was guilty of contributory negligence as matter of law; it submitted the issue to the jury.

(14)  The lookout statute of May 26, 1911, Act 284, p. 275, amending section 6607 of Kirby's Digest, as construed by this court in *Central Ry. Co.* v. *Lindley*, 105 Ark. 294, and *St. Louis, I. M. & S. Ry. Co.* v. *Gibson*, 107 Ark. 431, and other cases, has no application to street railways.

The same may be said of instruction No. 14.  The objection that this instruction assumes as a fact that ''plaintiff got into his cart and made no effort to avoid a collision,'' is not well taken.  The instruction is hypothetical, and states, ''if you find from the evidence,'' etc., that ''the plaintiff got into the cart.''

(15)  The criticism of instruction No. 11, in regard to the burden of proof, and which told the jury that if the testimony is equally balanced on a certain point, leaving their minds in doubt, their verdict should be for the defendant, etc., is not obnoxious to the criticism that appellant makes of it, but, taken as a whole, it, in effect, tells the jury that the plaintiff must establish the ma-

terial allegations of his complaint by a preponderance of the evidence.

Appellant complains that the court erred in refusing to grant certain prayers for instructions in regard to expert testimony, but the court had already given, at appellant's request, an instruction which contained all the law that appellant was entitled to on that subject. We are convinced that the instructions, as a whole, fairly and correctly submitted the issues to the jury.

(16-17)  III.  The appellant contends that the court erred in refusing to permit him to prove by certain witnesses the distance in which a car going at the speed fixed by appellee's witnesses could be stopped, and that such stop could be made in a distance of from four to six feet.  Appellant offered this testimony in rebuttal. Under the issues raised by the pleadings, the testimony was competent and proper to be introduced by the appellant in chief.  The appellant had alleged that the car was running at a dangerous and high rate of speed, was not supplied with proper brakes by which it could be properly and quickly stopped, and that if the motorman had properly applied the brakes as he should have done the appellant would not have been run down and injured. The answer denied these allegations.  To sustain these allegations of negligence it was competent for the appellant to prove and the burden was upon him to show that the motorman did not make a good stop. The offered testimony would have tended to show that appellee's motorman did not make a good stop.  Appellant went partly into the proof on this subject, and, in fairness to the appellee, he should have discovered all that he then had to produce.  "When the burden of proving any matter is thrown upon a party by the pleadings, he must generally introduce, in the first instance, all the evidence upon which he relies; and he can not, after going into part of his case, reserve the residue of his evidence for a subsequent opportunity."  Jones on Evidence, § 809.

(18)  "Rebuttal testimony should rebut the testimony advanced by the other side, and should consist of

nothing which might properly have been advanced as proof in chief." 2 Elliott on Evidence, § § 941, 948.

While the court, in its discretion, might have permitted the evidence to be introduced at the time it was offered, yet, since it was not rebuttal evidence, and no showing is made as to why it was not brought forward in chief, nothing to indicate that appellant was not in possession of the evidence at the time he was developing his case in chief, nothing to show that it had been discovered only after appellee had brought forward its testimony, the court did not abuse its discretion in rejecting it. It was within the discretion of the court to do so, and there was no error in its ruling. 2 Elliott on Evidence, § 948, and case cited in note 20; Underhill on Evidence, p. 551.

The record, upon the whole, is free from prejudicial error, and the judgment is therefore affirmed.