CENTRAL RAILWAY COMPANY OF ARKANSAS *v.* LINDLEY.

Opinion delivered November 18, 1912.

1. RAILROADS—DUTY TO KEEP LOOKOUT—TRAIN.—A motor car run by a railroad company for the purpose of carrying passengers over its line of railroad is a train within the meaning of the lookout statute, making it the duty of all persons running trains in this State to keep a constant lookout for persons and property on the track. (Page 297.)

2. SAME—DUTY TO KEEP LOOKOUT—BURDEN OF PROOF.—Under the lookout statute (Acts 1911, page 275), when the plaintiff has proved facts and circumstances from which the jury might infer that his property has been injured on account of the operation of the train, and that the danger might have been discovered and the injury avoided if a lookout had been kept, then he had made out a *prima facie* case, and the burden is on the defendant to show that a lookout was kept as required by the statute. (Page 298.)

3. SAME—KILLING OF STOCK—EVIDENCE OF NEGLIGENCE.—Evidence tending to prove that the person in charge of defendant's motor car was not keeping the lookout required by the statute, and that plaintiff's horses were frightened and chased some distance until they reached a trestle where they received injuries, and that if the motorman had stopped in time they might have stopped before reaching the trestle, justifies a finding against the defendant. (Page 299.)

Appeal from Yell Circuit Court, Dardanelle District; *Hugh Basham,* Judge; affirmed.

STATEMENT BY THE COURT.

P. C. Lindley sued the Central Railway Company of Arkansas in the circuit court, for $750, alleging that on the 15th of October, 1911, the defendant's servants engaged in running a motor car and train from Ola to Plainview, so negligently ran and operated the car and train as to cause two mares to be killed and one to be injured. The answer denied negligence. The facts are substantially as follows:

The railway company operated a motor car from Plainview to Ola for the purpose of carrying passengers. It was built with a deck with springs, and its capacity is six or eight passengers. The engine is a small type motor, slow speed, and is on the deck of the car. One man runs the car. On the 15th day of October, 1911, A. T. Reed, one of the servants of the company, ran the car from Plainview to Ola and came back with a passenger. He arrived at Ola about 5 o'clock in the afternoon and started back about 7 o'clock P. M. He had one passenger, who was also an employee of the railway company. On his return, when within about 150 yards of bridge number 9, he discovered three horses on the bridge. The bridge or trestle was about ninety feet long, and the horses were on the end next to the approaching car. Reed was not able to extricate the animals from the bridge, and abandoned his car and walked on to Plainview which was about two miles distance.

P. C. Lindley, the plaintiff, testified:

The next morning after the horses had become entangled in the bridge, I learned of the occurrence and went to the scene of the accident. Two of the horses were found dead near the bridge, and I recognized them as my horses. Another one was found on the right-of-way near by. Its feet and belly were badly scarred. It was also my horse. I examined the railroad track and found my horses' tracks on the railroad for about 300 or 400 yards back from the bridge. The tracks of my horses were going towards the bridge, and when I got in about 150 or 200 feet of the bridge it looked as if the tracks were plainer. The tracks appeared as if the horses were running faster, or at least that they had struck the ties and in some places had torn pieces or splinters off of

them.    I have often had occasion to notice the tracks of horses going at a rapid rate of speed and tracks of horses walking along.    The tracks as they got nearer to the bridge indicated that the horses were running faster.    The ties on the railroad track where the horses went on the bridge were scarred and torn up, as if the horses were running.    The ties were torn up for about thirty or thirty-five feet.    The plaintiff also testified as to the value of the horses that were killed and the amount of damage to the one that was injured.

Another witness for the plaintiff testified that he lived about one mile from Ola and at a distance of about 250 feet from the railroad track; that he heard the car pass on its return to Plainview and heard some persons on the car hallooing.    He does not think the motor car was going faster than it usually did, and said that its usual speed was fourteen or fifteen miles per hour.    On cross examination, he stated that he heard the hallooing about two miles from the bridge where the mares were killed and injured, and does not think it was loud enough to alarm the horses at the bridge.

Another witness testified that he lived about 200 yards from the railroad and something over a quarter of a mile from the bridge where the mares were killed and injured.    He heard the motor car go to Ola and back.    On the return trip he heard some people on the car talking and laughing.

A. T. Reed, for the defendant, testified that he ran the motor car on the day in question.    He says he was keeping a sharp lookout for persons and objects on the track, and did not discover the animals until they were on the bridge; that he was going at the rate of eight miles per hour when he discovered the horses; that he had no light on the car, but from the starlight he could see about 150 yards in front of the car; that he was looking straight ahead, keeping a close lookout for anything that might be in front, and that he was about 150 yards from the bridge when he saw the animals on it; that he shut off his power and let his car drift within 150 feet of the bridge; that he found it was impossible to do anything towards extricating the animals.

There was a verdict for the plaintiff in the sum of $300, and from the judgment rendered the defendant has appealed to this court.

*Hill, Brizzolara & Fitzhugh,* for appellant.

1. There was no proof that the horses were injured by appellant's motor car. 42 Ark. 123; 56 *Id.* 549; 60 *Id.* 187; 85 *Id.* 53.

2. There was no negligence of the trainmen. 36 Ark. 607; 37 *Id.* 593. The statutory presumption of negligence was overcome by testimony uncontradicted. 78 Ark. 234; 67 *Id.* 514.

3. A motor car is not a *train.* Kirby's Dig., § 6607; 91 Ia. 81; 153 Mass. 112; 173 *Id.* 177; 163 *Id.* 523; 156 *Id.* 13.

*Sellers & Sellers,* for appellee.

1. A motor car is a "train." Kirby's Dig., § 6707; 28 A. & E. Enc. Law, 444, note 4; 65 Ark. 235; 57 *Id.* 140; 96 *Id.* 243.

2. This suit is brought under Acts 1911, p. 275, for failure to keep a lookout. The railroad is liable for all damages from neglect to keep a proper lookout. The verdict is sustained by ample evidence, and there is no error in the court's charge.

HART, J., (after stating the facts). Counsel for the defendant say this action is based on the lookout statute, making it the duty of all persons running trains in this State to keep a constant lookout for persons and property on the track, and contends that a motor car is not a train within the meaning of the statute. In the case of *Little Rock & Fort Smith Ry. Co.* v. *Blewitt,* 65 Ark. 235, the court held that an engine is a train within the meaning of the statute. See also *Railway Co.* v. *Taylor,* 57 Ark. 136. The motor car in question was run by the defendant company for the purpose of carrying passengers over its line of railroad, and, we think, was a train within the meaning of the statute.

2. It is next contended that the court erred in refusing to give instruction numbered "A," asked by the defendant. It is as follows:

"A. The court instructs the jury that if they find from the evidence that the horses, whose death and injury are sued for, were found dead or injured so near the roadbed of the defendant company as to indicate that they were thrown there by a passing train of the defendant company, then the

presumption is that the killing or wounding was done by the defendant's train, and that it resulted from want of care, and the defendant would be liable unless this presumption is rebutted by evidence overcoming it; but this presumption does not attach if the evidence shows that the horses were not killed or wounded by contact with a train of defendant company. The jury is instructed that if they find that the horses whose death and injury is sued for herein were killed or injured on a bridge from falling therein and were not killed or injured by the coming in contact with a train of the defendant, then there is no presumption of negligence on part of the defendant, and the plaintiff can not recover unless he shows, by a preponderance of the evidence, negligence on part of defendant's employees causing the death or wounding of the horses sued for."

It was not charged or attempted to be proved that the horses were killed and injured by a train striking them. The action was not brought under section 6776, Kirby's Digest, and that section has no application to the facts of this case. The suit was brought under the act of May 26, 1911, which is as follows:

"It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads; and if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout. Notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed." Acts 1911, p. 275.

Under this section, that part of the instruction which tells the jury in effect that there is no presumption of negligence on the part of the defendant where the horses were

not killed or injured by coming in contact with a train is too broad, and is not the law. The statute make the railroad company liable for all damages resulting from neglect to keep a lookout for property upon its track, and imposes upon the railroad company the burden of proving that it has kept such lookout. The statutory policy of imposing the burden of proof in this respect upon the railroad company doubtless had its origin in the fact that the company's employees would know whether they kept a lookout or not, and the owner of the property would not know whether they had performed their duty in this respect or not. In other words, the statute makes it the duty of railroad companies to keep a lookout for property upon its tracks, and make it liable for all injuries that occur by reason of its failure to perform this duty.

Under the lookout statute, when the plaintiff has proved facts and circumstances from which the jury might infer that his property had been injured on account of the operation of the train, and that the danger might have been discovered and the injury avoided if a lookout had been kept, then he has made out a *prima facie* case, and the burden is on the defendant to show that a lookout was kept as required by the statute.

For the reasons here given instructions numbered "B" and "2," asked by the defendant, were properly refused by the court.

It is finally insisted by counsel for the defendant that the court should have directed a verdict for it under the facts. While we do not agree with counsel in this contention, it must be admitted that the question is a very close one. It is true that the motorman and also the other occupant of the car testified that the motorman kept a sharp lookout, and was looking straight ahead all the time, and that the horses were not seen until they were found on the bridge or trestle, but it can not be said that their testimony in this respect was reasonable and consistent and was uncontradicted by any other facts or circumstances adduced in evidence. It will be remembered that the motorman testified that he could see objects on the track 150 yards ahead, and was looking straight ahead all the time. The testimony of the plaintiff

shows that the horses came upon the track 300 or 400 yards from the bridge, and the impressions of their tracks made on the roadbed showed that soon after getting on the track they commenced running and continued to run faster as they approached the bridge. Then, too, testimony was introduced by the plaintiff tending to show that the persons in the car were heard hallooing and loudly talking and laughing. This testimony was not introduced, as counsel for the defendant seem to think, for the purpose of showing that the loud talking and laughing was calculated to frighten the horses, but was no doubt introduced for the purpose of showing that the motorman, being engaged in an animated conversation with the other occupant of the car, was not keeping the lookout required by the statute, and the testimony was competent for that purpose. It will be remembered that there were only two persons in the car, and the motorman would necessarily be a participant in the loud talking and laughing. Under all the facts and circumstances adduced in evidence, the jury were warranted in finding that the motorman was not keeping the lookout required by the statute, and that, had he been doing so, he would have seen the horses on the railroad track some distance before they reached the trestle and would have observed that they were frightened by the approach of the motor car, and that they commenced to run and continued to run faster as the car approached them. Hence the jury might have found that he was guilty of negligence in not stopping the car when he had reason to believe the horses would not leave the track before reaching the trestle, and under such circumstances should have anticipated, as a natural and probable consequence of not stopping the car, that the horses would run into the trestle and be killed or injured. *St. Louis, I. M. & S. Ry. Co.* v. *Rhoden,* 93 Ark. 29.

The judgment will be affirmed.