JONESBORO, LAKE CITY & EASTERN RAILWAY COMPANY *v.*
KILGORE.

Opinion delivered April 7, 1919.

1. RAILROADS — INJURY BY RUNNING OF TRAIN — PRESUMPTION.—
Where a horse was killed when it ran into a trestle, was struck
by a train, but it was neither alleged nor proved that it was
struck by a train, Kirby's Dig., § § 6776, 6781, as to liability
for killing animals by trains and presumptions from killing, have
no application.

2. SAME—INJURY TO ANIMAL—PROXIMATE CAUSE.—Where an animal
became frightened by a train and ran into a trestle, it must be
shown that the negligence of the railroad employees in charge
of the train was the proximate cause of the injury, to sustain
a recovery from the railroad company.

3. SAME—INJURY TO ANIMAL—JURY QUESTION.—Evidence *held* to
make it a jury question whether a railroad engineer exercised
due care after discovering the peril of an animal frightened into
a trestle by the approaching train.

Appeal from Craighead Circuit Court, Lake City
District; *R. H. Dudley*, Judge; affirmed.

STATEMENT OF FACTS.

This action was brought by the appellee against the
appellant for the alleged killing of appellee's mare by
one of appellant's trains.

It is alleged that the appellant ran one of its trains
upon appellee's mare and wrongfully and wilfully fright-
ened her, causing her to run into a trestle on appellant's
road, which resulted in her death. The value of the ani-
mal was alleged to be $175.

The appellant answered, denying the allegations of
the complaint and admitting the allegations as to value.

One witness testified in substance that on June 19,
1917, four or five animals, among which was the mare of
appellee, were observed running on appellant's track and
right-of-way ahead of one of appellant's trains going
east. Witness said that he saw the animals run about
six or eight rods before one of them "kinda stumbled and
went on." The train, when it stopped, was two or three
rods behind it. By the time the train stopped "the animal

had gotten out of the trestle.'' ''I don't think,'' says the witness, ''it got plumb down.'' Witness' attention was attracted to the animals by the sounding of the whistle.

Another witness said that he ''saw the horses coming down the track in front of the train, it was pretty close. It stopped when the animal went into the trestle. The track was about as level as any track they have and the track going down from there was straight. It looked like the mare tried to stop and could not stop and slid into the trestle. She was in the trestle when the train stopped. She stayed in the trestle a minute or two and then went on, rolled off the dump. The train passed her there. The slide was about ten feet. The rim of the mare's belly was burst and her guts were coming out in the skin. The animal got out of the trestle herself and went away. The slide was in the middle of the track. She left hair and blood on the rails in the trestle. The track at that point is elevated on a dump about two feet high and slopes off into the flat on the other part of the right-of-way.'' According to witness' best judgment, the mare ran ''something like fifty or sixty yards before she fell into the trestle.''.

It was shown that the animal in controversy belonged to the appellee.

A witness on behalf of the appellant testified as follows: ''I was the engineer on the train in June, 1919, that scared some horses and ran them down the track. There is a spur about a quarter of a mile from the trestle and I started blowing the whistle at that spur for some horses that were on the right-of-way near the track. They ran up the track a piece and then got into the middle of the track. As soon as they got into the middle of the track I shut off the steam and was blowing the whistle all the time, and was slowing down my train. The first horse jumped over the trestle, the second fell in and I don't remember how the other passed it. I was going then about five miles an hour and could have stopped my train within ten feet, but the horse got out of the trestle and ran on down the track as fast as he had ever run. I

didn't think that the horse was hurt at all by the way it ran. I was going to slow up to stop to get the horse out but before we got there he was out and had run off. We blow the stock whistle to frighten them away. It is the order of the company and a Government law.. The track at that place is on a slight elevation and there is nothing to prevent the horses from running off the dump any place. The trestle or culvert is about ten feet long and from top to bottom of the culvert is not over two or two and a half feet. From the time the horses got on the track I shut off the steam and commenced to slow down."

From a judgment in favor of the appellee in the sum of $175 is this appeal.

*Eugene Sloan,* for appellant.

1. It was not alleged nor proven that the mare was injured by contact or collision with the train nor by the "running" of the train and Kirby's Digest, sections 6776-6781, have no application. This case does not fall within the provisions of our statute and plaintiff failed to make out a case. 84 Ark. 407; 107 *Id.* 441; 57 *Id.* 16; 84 *Id.* 421; 36 *Id.* 174; 116 *Id.* 49; 66 *Id.* 248.

2. The engineer had the right to presume that the mare would leave the track and not try to cross the trestle or culvert and there was no negligence in this presumption. 36 Ark. 607; 37 *Id.* 593. He had the right and it was his duty to sound the stock-alarm whistle and use other means to frighten stock away from the track and right-of-way and defendant was in no way liable for the injury so long as the engineer was not guilty of any heedless, unnecessary or wanton act which would increase the fright or danger. No such heedlessness or wantonness was shown. 77 Ark. 174; 99 *Id.* 226. The court erred in not directing a verdict for defendant and in refusing instruction No. 1 for defendant. Due care and caution were exercised by the engineer, and he did all in his power to prevent the injury and he started to stop the train but the mare, after she stumbled, was up and gone before he stopped the train. There was no statutory pre-

sumption of negligence, but if so, the evidence rebuts the presumption. 66 Ark. 439; 53 *Id.* 96; 37 *Id.* 593; 67 *Id.* 514; 78 *Id.* 234; 66 *Id.* 248-439. There was no question for a jury to pass upon. The facts disclose an unavoidable accident for which there was no liability. Cases *supra.*

*S. R. Simpson,* for appellee.

The instructions given properly put the question of appellants' negligence before the jury. It was a question for the jury as to whether there was negligence or not in not stopping the train. If the witnesses and the engineer were not testifying as to the same incident, the statutory negligence shown by the killing by a running train is in no way met. 104 Ark. 501; 111 *Id.* 309; 119 *Id.* 179; 66 *Id.* 248; 113 *Id.* 418. The verdict of the jury settles the question of negligence in not stopping the train. 102 Ark. 417; 99 *Id.* 422; 124 *Id.* 523; 36 *Id.* 607; 69 *Id.* 619.

It is not necessary to prove that the train hit the animal. 37 Ark. 598; 84 *Id.* 507. When stock is killed by the running of trains there is a presumption of negligence. Kirby's Dig., § 6773; 80 Ark. 382.

WOOD, J., (after stating the facts). The appellee does not allege that his mare was killed or wounded by contact or collision with appellant's train running in this State, nor does the testimony of the appellee tend to prove that the animal in controversy was struck by the running of a train. Therefore, sections 6776 and 6781 of Kirby's Digest have no application to the facts of this record.

The only issue is whether or not the proximate cause of the injury and death of appellee's mare was the negligence of the employees of the appellant. *Earl v. St. L., I. M. & S. Ry. Co.,* 84 Ark. 507-10.

The above case rules this. See, also, *Central Ry. Co. v. Lindley,* 105 Ark. 294-98.

Under the evidence it was a question for the jury to determine whether or not the engineer of the appellant,

after discovering the peril that the animal was in, exercised ordinary care, that is all the care that a reasonably prudent person should have exercised under the circumstances to avoid the injury.

This issue was submitted under correct instructions, and there was testimony to sustain the verdict.

The judgment is, therefore, affirmed.