KANSAS CITY SOUTHERN RAILWAY COMPANY v. HAYNIE.

## Opinion delivered April 20, 1925.

1. RAILROADS—INJURY TO STOCK—BURDEN OF PROOF.—In the absence of allegation and proof that stock was injured by contact or collision with a train within the State, no presumption of negligence arose, and it devolved on plaintiffs to show affirmatively by a preponderance of the evidence that the injury was caused by the negligent operation of defendant's train.

2. APPEAL AND ERROR—INSTRUCTION HARMLESS WHEN.—An intruction that if the jury believed from a preponderance of the testimony that plaintiff's stock was injured on defendant railroad's right-of-way because of the negligent running of defendants' train, the burden was on defendant to show that the injury was not due to the negligent operation of the train, held not prejudicial to defendant, though meaningless.

3. RAILROADS—NEGLIGENCE IN FRIGHTENING ANIMALS.—Evidence held to warrant finding that stock injured on defendant's right-of-way were needlessly frightened and stampeded across a cattle-guard and thereby injured through the negligent operation of defendant's train.

Appeal from Little River Circuit Court; B. E. Isbell, Judge; affirmed.

June R. Morrell, Jos. R. Brown, and Jas. B. McDonough, for appellant.

DuLaney & Steel, for appellee.

HUMPHREYS, J. This is an appeal from a judgment, rendered in the circuit court of Little River County, against appellant in favor of appellees, for $315, based upon an injury upon nine head of mules and horses caused through the alleged negligent running of appellant's passenger train No. 4, leaving out of Wilton about 1 o'clock in the afternoon of June 10, 1923.

Appellant contends for a reversal of the judgment upon the alleged ground that there is no substantial evidence in the record tending to show that the injury of the stock resulted from the negligent operation of its train. It was not alleged, and there was no evidence in the record tending to show, that the stock was injured by contact or collision with appellant's train while running in the State, so no presumption of negligence arose, and

it devolved upon appellees to affirmatively show by a preponderance of the evidence that the injury to the stock was caused by the negligent operation of appellant's train. *Earl* v. *St. L. I. M. & S. R. Co.*, 84 Ark. 507; *Central Ry. Co.* v. *Lindley*, 105 Ark. 294; *J., L. C. & E. Ry. Co.* v. *Kilgore*, 108 Ark. 308. This issue was clearly submitted to the jury in instruction No. 2, requested by appellee, and instruction No. 2, requested by appellant. Instruction No. 1, requested by appellee and given by the court, does not contradict either of the instructions referred to above, as it leaves the burden upon appellee to show that the injury was caused by the negligent operation of appellant's train. For this reason, although practically meaningless, the instruction was not harmful. It is as follows:

"The court instructs the jury that, if you believe from a preponderance of the testimony in this case that the stock alleged to have been injured in plaintiff's complaint was injured on the right-of-way of the defendant's road, and that such injury was due to the negligent running of defendant's train, then the burden is on it to show that such injury was not due to its negligence in operating such train."

The only objection urged to the instruction requested by appellees and given by the court is that they are abstract. These objections will be considered and determined in considering and determining whether there is any substantial evidence in the record supporting the verdict.

Appellees were road contractors, and owned a number of horses and mules with which they were constructing a road near Wilton. Some one left the lot gate open where they were kept, and nine head of them got out and wandered onto the railroad right-of-way, which was fenced. The railroad ran north and south and curved slightly to the west, north of Wilton. There was a cattle-guard across the track, in a slight cut anywhere between a quarter and a half-mile north of Wilton. There was

nothing to obstruct the view of the engineer and fireman between Wilton and the cattle-guard. Passenger train No. 4 left Wilton, going north, at a speed of about twenty miles an hour, and, after traveling two hundred yards, sounded the stock alarm. This attracted the attention of T. S. Haynie, who was out looking for his mules and horses, and J. A. Miller, who was traveling toward the railroad right-of-way in a lane leading in the direction of the cattle-guard.

T. S. Haynie testified, in substance, that he followed after the train, which made a short stop after the engine crossed the cattle-guard; that he observed the tracks of mules and horses, which had apparently torn up the ground between the rails and on the dump, so as to indicate that they had been running before they reached the cattle-guard from the south; that there was fresh blood on both sides of the cattle-guard, and, just after crossing same, he observed his mules and horses standing on the right-of-way; that a part of them became frightened at a freight train approaching from the north, and ran over the cattle-guard and off the right-of-way; that he had no way to get the others out except to drive them back over the cattle-guard, which he did, with the assistance of J. A. Miller; that he found from one to four holes in the hoofs of his mules and horses made by spikes in the cattle-guard, which reduced their market value about $1,000 or more.

J. A. Miller testified that he heard the stock alarm, and thought his mules were upon the right-of-way; that he could see the train, but could not see the mules and horses from where he was standing until they reached a distance of about twenty feet north of the cattle-guard; that, when he first discovered them, they were running north; that, when he assisted in driving them out, he observed a mare and two other animals limping, and he observed fresh blood on both sides of the cattle-guard.

Several other witnesses testified to the spike holes found in the hoofs of the mules and horses and to the

difference between the market value of the animals before and after the injury.

Learned counsel for appellant argued that all the testimony shows that a proper lookout was kept, because the stock alarm was sounded and the train stopped; also that there is an entire lack of evidence to show that the train was negligently operated so as to frighten the horses and mules across the cattle-guard from the south to the north side thereof. In fact, it is argued that it was not shown that the horses and mules were over on the south side of the cattle-guard.

The fact that the stock alarm was sounded and the train was stopped, either just before it reached the cattle-guard or after it got upon it, is not conclusive proof that a proper lookout was being kept at the time the animals were discovered, or that the lookout was properly maintained after they were discovered. It might be that they could have been discovered and the train stopped sooner had a proper lookout been kept and maintained. The cattle-guard was from one-quarter to one-half mile ahead of the train when the stock alarm was sounded, and there was no obstruction to prevent the engineer or fireman from seeing the animals if they were on the south side of the cattle-guard, so the jury may have drawn a reasonable inference that, by keeping and maintaining a proper lookout, the animals could have been discovered and the whistling and the train stopped in time to prevent the frightened animals from running over the cattle-guard. It is argued, however, that there is no evidence showing that the animals were on the south side of the cattle-guard when discovered, or when they might have been discovered if a proper lookout had been kept. There are some very substantial circumstances tending to show that they were on the south side of the track at the time the train approached the cattle-guard. These were the only animals seen by Haynie and Brown upon the right-of-way which caused the trainmen to sound the stock alarm. Horse and mule tracks made by running

animals in the direction of and south of the cattle-guard were discovered by these witnesses. Brown first saw the animals running from the south toward the north, about twenty feet north of the cattle-guard, which indicated that they had come across it. Fresh blood was found upon both sides of the cattle-guard before the animals passed over it going out. Brown also noticed that three of the animals were limping before they were driven out over the cattle-guard. Spike holes were found in the hoofs of the animals, indicating that they were made while they were running. We think the circumstances warranted the jury in concluding that the animals were on the south side of the cattle-guard when discovered, and were needlessly frightened and stampeded over and across the cattle-guard through the negligent operation of the train.

The evidence being sufficient to support the verdict and the hypothesis upon which each instruction was given, the judgment is affirmed.